IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| ANTHONY LANG, SR., individually | : | |
| and on behalf of all others similarly | : | Civil Action  No. 1:12-cv-1247 |
| situated, | : | Complaint filed June 29, 2012 |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | Judge Jones |
| | : | |
| PENNSYLVANIA HIGHER | : | |
| EDUCATION ASSISTANCE | : | |
| AGENCY, | : | |
| | : | ELECTRONICALLY FILED |
| **Defendant** | : | |

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
COUNT II OF PLAINTIFF'S COMPLAINT

Stueve Siegel Hanson LLP          McCarthy Weisberg Cummings, P.C.
George A. Hanson (*pro hac*)       Larry A. Weisberg (PA 83410)
Lee R. Anderson   (*pro hac*)      Derek W. Cummings (PA 83286)
460 Nichols Road, Suite 200       James J. McCarthy, Jr. (PA 82266)
Kansas City, MO 64112             2041 Herr Street
Tele:  (816) 714-7100             Harrisburg, PA 17103-1624
Fax:   (816) 714-7101             Tele:  (717) 238-5707
                                  Fax:  (717) 233-8133


October 16, 2012                  *Attorneys for Plaintiff*

## Table of Contents

Table of Authorities     iii

Introduction     1

I. PHEAA Is a "Corporation" as Defined by its Enabling
     Act and the Pennsylvania Wage Laws.     2

II. The Pennsylvania Legislature *Formerly* Expressly
     Excluded Commonwealth Employees from the
     Minimum Wage Act, *then Amended the Statute*
     *to Remove the Exclusion.*     5

III. Pennsylvania's Sovereign Immunity Act is Inapplicable.     11

     A. *PHEAA's Insulation from the Treasury Bars
       its Claim of Immunity.*     12

     B. *The Sovereign Immunity Statute Does Not
       Trump the Wage Laws.*     14

IV. CONCLUSION     16

# Table of Authorities

Cases

*Beardsley v. State Employees' Retirement Board*
    691 A.2d 1016 (Pa. Commw. Ct. 1997)     7

*Commw. v. Bigelow*, 399 A.2d 392 (Pa. 1979)     4

*Cooper v. SEPTA*, 548 F.3d 296 (3d Cir. 2008)     14

*Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985)     9

*Guise v. Pa. Convention Ctr. Auth.* (E.D. Pa. Case No. 08-cv-00568)     4

*Huffman v. Borough of Millvale*, 591 A.2d 1137 (Pa. Commw. Ct. 1991)     10

*Mayle v. Penn. Dept. of Highways*, 388 A.2d 709 (Pa. 1978)     16

*Metro. Prop. & Liab. Ins. Co. v. Ins. Comm'r of Commw. of Pa.*,
    580 A.2d 300 (Pa. 1990)     15

*National League of Cities v. Usery*, 426 U.S. 883 (1976)     8

*Snead v. Soc'y for the Prevention of Cruelty to Animals of Pa.*,
    985 A.2d 909 (Pa. 2009)     12

*Ujevich v. City of Clairton*, 1 Pa. D. & C. 4th 66 (Pa. Com. Pl. 1988)     10


Statutes

1 Pa. Stat. Ann. § 1921     2, 5

1 Pa. Stat. Ann. § 1976(a)     3

1 Pa. Stat. Ann. § 2310     15

3 Pa. Stat. Ann. § 459-1002(a.1)(6)     3

7 Pa. Stat. Ann. § 1908(a)(iii)     3

16 Pa. Stat. Ann. § 2356     3

16 Pa. Stat. Ann. § 2399.16(e), 2399.66(e)     3

16 Pa. Stat. Ann. § 2632  , 2714     3

16 Pa. Stat. Ann. § 3000.3013     3

16 Pa. Stat. Ann. § 5556     3

24 Pa. Stat. Ann. § 5101     2

43 Pa. Stat. Ann. § 260.2a    1, 2

43 Pa. Stat. Ann. § 333.103    1, 2

43 Pa. Stat. Ann. § 333.105    6

43 Pa. Stat. Ann. § 1101.703    10

64 Pa. Stat. Ann. § 6003    4

Other Authorities

1 Pa. D. & C. 3d 33; 1976 WL 401515 (Pa. A.G.)    7-9

The Pennsylvania Higher Education Assistance Agency is not an educator. It has no classrooms, no teachers, no schoolbooks.  It is a student loan provider, servicer, and debt collector; it is a banker with over $9.5 billion in assets netting over $140 million in profits in fiscal year 2011 alone.  Its enabling act specifies that its liabilities are *not* in any way obligations of the Commonwealth's Treasury. Even its grant-administering function is performed "without taxpayer support."

Crucially, in its enabling act, PHEAA is defined to differentiate it from governmental functions: it is a "public *corporation*."   Because PHEAA is a "corporation," it is expressly subject to Pennsylvania's wage laws.   The Pennsylvania General Assembly defines "Employer" in the Wage Payment and Collection Law as "every… corporation."  43 Pa. Stat. Ann. § 260.2a.  Likewise, the General Assembly defines "Employer" in the Minimum Wage Act as "any… corporation."  43 Pa. Stat. Ann. § 333.103.  The only relevant inquiry is whether PHEAA is a "corporation."  It is, so the wage laws apply.  There *was* a time when the state wage laws expressly *excluded* all employees of the Commonwealth from their application, but the exclusion for Commonwealth employees was *removed*. Regardless of PHEAA's "agency" status, the wage laws apply.

Moreover, the Pennsylvania Supreme Court and the Third Circuit have both held that sovereign immunity is inapplicable to entities, like PHEAA, whose debts are not obligations of the Treasury.  PHEAA's motion to dismiss should be denied.

## I.    PHEAA Is a "Corporation" as Defined by its Enabling Act and the Pennsylvania Wage Laws.

PHEAA's motion to dismiss must be denied because the Pennsylvania General Assembly expressly says that the wage laws apply to "any" and "every" "corporation," and PHEAA's enabling act defines it as a "corporation."  "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."  1 Pa. Stat. Ann. § 1921(b). PHEAA was created in 1963 by the Pennsylvania General Assembly as a "a body corporate and politic constituting a public corporation and government instrumentality."  24 Pa. Stat. Ann. § 5101.  In its motion to dismiss, PHEAA ignores its definition as a "corporation" and instead asks whether it is a Commonwealth "agency."  But whether PHEAA is an "agency" is irrelevant to application of the plain language of the wage laws, which neither include nor exclude "agencies."  The wage statutes apply to "corporations" because that is what the statutes say.

Both the Minimum Wage Act and the Wage Payment and Collection Law expressly define the scope of their application as including "any" and "every" "corporation."  43 Pa. Stat. Ann. §§ 260.2a, 333.103.  The wage laws do not qualify "corporation"; they do not say "private corporation."  "Corporation" appears in the wage statutes with no qualifier at all.  The Pennsylvania legislature used "corporation" in all three relevant laws in succession: First, it used the word

"corporation" in 1961 in the Wage Payment and Collection Law.  Second, it used the word "corporation" in 1963 when it created PHEAA.  Third, it used the word "corporation" in 1968 in the Minimum Wage Act.[1]

The legislature's use of the term "corporation" to define PHEAA cannot be ignored.  The term *must* have meaning.  Ignoring the legislature's definition of PHEAA as a "corporation" would render the term pure surplusage.  And the legislature cannot be deemed to have intended "corporation" in the wage laws to mean "private corporation" when it easily could have used that term, if "private corporation" is what it meant.  Indeed, the legislature routinely specifies "*private* corporation" when that is what it means.  *E.g.,* 1 Pa. Stat. Ann. § 1976(a) ("private corporation"); 3 Pa. Stat. Ann. § 459-1002(a.1)(6) ("private corporation"); 7 Pa. Stat. Ann. § 1908(a)(iii) (distinguishing "State agency or private corporation"); 16 Pa. Stat. Ann. § 2356 ("private corporation, city, borough, town…"); 16 Pa. Stat. Ann. § 2399.16(e), 2399.66(e) ("private corporation"); 16 Pa. Stat. Ann. § 2632, 2714 ("municipal or private corporation"); 16 Pa. Stat. Ann. § 3000.3013 ("private corporation"); 16 Pa. Stat. Ann. § 5556 ("private corporation, city, borough or township").  Despite routinely specifying "private corporations" throughout Pennsylvania law, the legislature did *not* specify "private" corporations for

---

[1] The original text and subsequent amendments of the Wage Payment and Collection Law are attached as Ex. 1.  The original text and subsequent amendments of the Minimum Wage Act are attached as Ex. 2.

application of the wage laws.  Rather, it said "any" and "every" corporation is subject to the wage laws.  Use of the narrower term "private corporation" where it meant it, and the unqualified "corporation" in the wage statutes, shows the legislature did not intend the wage statute to be limited to "private corporations." *See Commw. v. Bigelow*, 399 A.2d 392, 394-95 (Pa. 1979) (use of different terms in statutes indicates different intent).

The United States District Court for the Eastern District of Pennsylvania recently rejected a motion to dismiss a claim under the Wage Payment and Collection law against a Commonwealth-created "corporation."  In *Guise v. The Pennsylvania Convention Center Authority*, the plaintiff alleged, among other claims, violation of Pennsylvania's Wage Payment and Collection Law.[2]  Similar to PHEAA, the Convention Center Authority is defined by its enabling act as "An agency and public instrumentality of the Commonwealth and a body politic and corporate."  64 Pa. Stat. Ann. § 6003.  Thus the Convention Center Authority, like PHEAA, is defined by the legislature as a "corporation."  The *Guise* court denied the Convention Center Authority's motion to dismiss the plaintiff's Wage Payment and Collection Law claim, despite the Convention Center Authority's status as an "agency and public instrumentality."

---

[2] E.D. Pa. Case No. 08-cv-00568.  The *Guise* court's April 18, 2008 Order denying the motion to dismiss, as well as the defendant's motion and the plaintiff's Amended Complaint, are attached hereto as Ex. 3.  The *Guise* plaintiff's Wage Payment and Collection Law claim is Count IV.

PHEAA asks this court to rewrite the Pennsylvania wage statutes to add the word "private" where the legislature did not, or to excise the word "corporation" from PHEAA's enabling act.  There is nothing ambiguous in the statutes.  By expressly defining "employer" in the wage laws to include all "corporations," and by defining PHEAA as a "corporation," the Pennsylvania General Assembly expressly applied the wage laws to PHEAA.

## II. The Pennsylvania Legislature *Formerly* Expressly Excluded Commonwealth Employees from the Minimum Wage Act, *then Amended the Statute to Remove the Exclusion*.

If the Court finds that the text of the statutes is "not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:… (5) The former law, if any, including other statutes upon the same or similar subjects."  1 Pa. Stat. Ann. § 1921(c).  The history of amendments to the wage laws confirms what is plain on their face: the wage laws apply to PHEAA, regardless of whether it is an "agency."

The original Minimum Wage Act in 1968, at § 5(a)(7), expressly provided an exemption for persons "In the employ of the United States or the Commonwealth of Pennsylvania or any political subdivision or instrumentality of the Commonwealth of Pennsylvania."  If that provision remained in the statute today, the Act would presumably be inapplicable to PHEAA.  But in 1974, the General Assembly amended the Act to *remove* that entire exemption.  This

5

confirms that at least since 1974, the wage laws apply to PHEAA regardless of its status as a Pennsylvania "agency."  First, and most obviously, the removal of the exemption that previously might have applied reflects the legislature's intent that Commonwealth employees *are* covered *after* the 1974 amendment.

Second, that the legislature previously expressly excluded Commonwealth employees shows that the legislature did *not* treat its employees as automatically or silently exempt from the statute under general sovereign immunity.  There would have been no point in expressly exempting Commonwealth employees if they were otherwise exempt under sovereign immunity.  Declaring Commonwealth employees exempt from the wage statute would be surplusage if those employees were already exempt under the doctrine of sovereign immunity.  In any event, as explained further below, PHEAA is not privileged to invoke sovereign immunity.

Moreover, another 1974 change in the Minimum Wage Act confirms the General Assembly's intent to broadly *include* Commonwealth employees with that amendment: it *adds* an exemption, 43 Pa. Stat. Ann. § 333.105(a)(12), for "Employes not subject to civil service laws who hold elective office or are on the personal staff of such an officeholder, are immediate advisers to him, or are appointed by him to serve on a policy-making level."  By specifically carving out that niche of Commonwealth employees as exempt from the Minimum Wage Act, the statute reflects a clear intent that *other* Commonwealth employees are subject

to the statute.  If Commonwealth employees were broadly exempt from the wage laws, the amendment to add the exemption for *certain* Commonwealth employees would be surplusage.  The General Assembly's intent is for public employees to be protected by the wage laws.  *See Beardsley v. State Employees' Retirement Board*, 691 A.2d 1016 (Pa. Commw. 1997) (PHEAA is subject to state Retirement Code).

PHEAA ignores the course of amendments to the wage statutes, but cites a 1976 Attorney General opinion that reviews them.  1 Pa. D. & C.3d 33, 1976 WL 401515 (Pa.A.G.)   Although the Attorney General's reasoning is tortured in concluding that Commonwealth employees did not become covered by the 1974 *removal* of their exclusion,[3] even assuming the Attorney General's reasoning was correct when issued in 1976, that reasoning dictates that PHEAA *is* covered by the wage statutes *now*, and throughout the applicable statute of limitations period.  The Attorney General summarizes his conclusion, 1976 WL 401515 at *3:

> It is our opinion that the General Assembly did not intend, by the negative act of removing the public employe exemption from the **Minimum Wage Act** of 1968, to thereby extend coverage of the act to employes of the Commonwealth and its political subdivisions and instrumentalities. We are rather of the view that, in removing the exemption, the General Assembly intended nothing more than to

---

[3] The Attorney General's opinion depends on the concretely *wrong* statement that "The Commonwealth is neither specifically named in the Minimum Wage Act of 1968, nor can the intention to include the Commonwealth be necessarily implied from the act."  1976 WL 401515 at *5.  Of course, the 1968 Act *does* expressly name the Commonwealth, *as an exemption* from application of the act.  The removal of that express exemption dictates the conclusion that the 1974 amendment was intended to apply the wage laws to Commonwealth employees.

*entirely* exclude Federally covered public employes from the operation of the Pennsylvania Act.[4]

To explain his conclusion about the 1974 amendment, the Attorney General observes that the Fair Labor Standards Act (FLSA) was amended in 1974 to extend to "virtually all public employes." *Id.* Because the 1974 state law amendment preserved its already-existing exclusion for persons covered by the FLSA, the Attorney General reasons that the removal of the exclusion for Commonwealth employees had no practical effect for most of those employees; they *had been* excluded by the 1968 state law as "Commonwealth employees," but they *remained* excluded after removal of the "Commonwealth employee" exemption because they were *still* subject to the FLSA exemption in the state law, by virtue of the FLSA being *expanded* to cover state employees. Because the state act's exclusion of persons covered by the FLSA persisted, the Attorney General concluded that the U.S. Supreme Court's subsequent opinion in *National League of Cities v. Usery*, 426 U.S. 883 (1976), which held the FLSA could not constitutionally apply to state employees, did not cause the state wage act to cover Commonwealth employees.

But even applying the Attorney General's reasoning, the necessary result *today* is dictated by the 1988 amendment to the Minimum Wage Act. That amendment *removed* the exclusion in the definition of "employe" for "any individual to the extent that he is subject to the [FLSA]." *I.e.*, prior to 1988,

---

[4] The statutes and Attorney General use the spelling "employe" for "employee."

persons covered by the FLSA were excluded from coverage under state law, as the Attorney General observed in 1976.  If the Attorney General was correct in 1976 that the legislature's intent in 1974 was to keep Commonwealth employees *excluded* by the retention of the exclusion for persons covered by the FLSA (which in 1974 applied to state employees), then the 1988 amendment to remove the exclusion under the state wage law for persons covered by the FLSA means that since 1988, Commonwealth employees have been covered.

That conclusion – that the General Assembly's removal of the FLSA exclusion in 1988 dictates that Commonwealth employees thereby became subject to the state wage laws – is further reinforced by the timing of that 1988 amendment.  The U.S. Supreme Court in 1985 reversed its decision in *Usery* and reinstated the FLSA's application to state employees.  *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 546-47 (1985).  So in 1988 when the Pennsylvania General Assembly *removed* the exclusion from the state wage law for persons covered by the FLSA, it did so with its eyes wide open to the effect: Pennsylvania's prior exclusion of Commonwealth employees from the state wage law by virtue of the state's exclusion of persons covered by the FLSA, was excised.  The *Garcia* court's *inclusion* of state employees for coverage under the FLSA, followed by the General Assembly's removal from state law of the

exclusion for FLSA-covered persons, means that Commonwealth employees are covered by both the FLSA and state law.[5]

Finally, in yet *another* expression of the General Assembly's intent to provide Commonwealth employees the protection of the wage statutes, Pennsylvania law prohibits public employers or employees' unions from entering a collective bargaining agreement "in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly."  43 Pa. Stat. Ann. § 1101.703.   The statute does not say a union may not bargain away statutory "rights," which might beg the question whether Plaintiff *has* rights under the wage statute.  The statute says public employers and unions may not make a bargain that violates "*any* statute" of the Commonwealth.   PHEAA is a union employer; Plaintiff is a union member.  The parties' union contract is not at issue here, but the legislature's clear intent is that public employees are protected by state wage laws.

Although the history of the amendments to the wage statutes applies broadly, this Court is not deciding whether *all* Commonwealth employees are

---

[5] Defendant mistakenly relies on cases holding that municipalities are not "employers" under the wage statutes.  *See Huffman v. Borough of Millvale*, 591 A.2d 1137 (Pa. Commw. Ct. 1991); *Ujevich v. City of Clairton*, 1 Pa. D. &. C.4th 66 (Pa. Com. Pl. 1988).  But PHEAA is not a municipality or a municipal agency.  Rather, PHEAA is a creation of the Commonwealth, which the wage statutes directly addressed.  *Huffman* and *Ujevich* fail to address the statutory language or the amendments that affect "Commonwealth" employers like PHEAA.  *Huffman* and *Ujevich* also predate the Pennsylvania Supreme Court's *Snead* test for application of sovereign immunity, discussed herein, which PHEAA fails.

subject to the state wage laws, only whether PHEAA is.  Because PHEAA is a "corporation" under the wage statutes, and because the amendments to the wage statutes show the General Assembly's intent to apply the wage laws to Commonwealth employees, PHEAA is subject to state wage laws.

## III.   Pennsylvania's Sovereign Immunity Act is Inapplicable.

PHEAA's motion to dismiss ignores the plain text of the wage statutes and their historical changes.  Instead, PHEAA suggests that the blanket of sovereign immunity enshrouds the wage statutes.[6]  It does not.  This Court need not decide whether PHEAA may *ever* claim immunity for *any* purpose, because the General Assembly's specific handling of Commonwealth employees in the wage statutes defeats PHEAA's effort to use the doctrine of immunity to trump the wage laws.  But PHEAA's claim of immunity anyway fails for at least two reasons.  First, the Pennsylvania Supreme Court and the Third Circuit have both held that entities like PHEAA whose liabilities cannot burden the Commonwealth treasury are not protected by sovereign immunity.  Second, the specific wage statute legislation dealing with Commonwealth employees shows there has never been a presumption of immunity from the wage statutes, and the adoption of the sovereign immunity statute did not abrogate any provision of the wage statutes by implication.

---

[6]  PHEAA's immunity argument is abridged and difficult to understand, handicapping Plaintiff's ability to respond.  Plaintiff may seek to respond further if PHEAA clarifies its position in its reply brief.

**A. *PHEAA's Insulation from the Treasury Bars its Claim of Immunity.***

Even looking to immunity law apart from the wage laws, PHEAA is not entitled to sovereign immunity. A 2009 decision by the Pennsylvania Supreme Court shows that an entity like PHEAA does *not* fall within the ambit of the immunity statutes because a suit against it poses no risk to the Pennsylvania treasury. The Supreme Court held that the "important" factor for determining application of the Commonwealth immunity statutes is "whether the entity was created by the state to perform a state function so that a judgment against it would, in essence, injure the state." *Snead v. Soc'y for the Prevention of Cruelty to Animals of Pa.*, 985 A.2d 909, 913 (Pa. 2009). In *Snead*, the defendant "SPCA" was created by the General Assembly "for the enforcement of all laws… for the protection of dumb animals." *Id.* at 912. It acted with law enforcement authority, received 50% of fines collected, employed officers statutorily authorized to carry firearms, and acted with authority to obtain search warrants, seize evidence, conduct searches, and arrest offenders. *Id.* Despite this deep involvement with state law enforcement activity, the Supreme Court held that, because the SPCA was a non-profit "corporation" with "funding largely derive[d] from non-governmental sources," and because "SPCA cannot point to any Commonwealth assets that would be at risk from any judgment against it… the SPCA is not entitled to the defense of sovereign immunity." *Id.* at 912-13.

Those same factors dictate that PHEAA is not entitled to immunity. Although created by the General Assembly, PHEAA is a "corporation" (24 Pa. Stat. Ann. § 5101) and its statutes expressly provide that no liability of PHEAA may ever be deemed an obligation of the Pennsylvania treasury. Specifically, 24 Pa. Stat. Ann. § 5104(8) provides that "no obligation of the agency shall be a debt of the Commonwealth and it shall have no power to pledge the credit or taxing power of the Commonwealth or to make the agency's debts payable out of any moneys except those of the agency." Indeed, PHEAA need not look to the Commonwealth to pay any obligations: in its fiscal year ending June 30, 2011, PHEAA generated net income from interest and service fees in excess of $140 million; it held $672 million in *net* assets, including $319 million in unrestricted assets. (Ex. 4 at pp. 8-9). PHEAA is a revenue machine with no power or need to burden the Treasury. Under the test articulated by the Supreme Court in *Snead*, PHEAA's insulation from the Commonwealth treasury defeats its claim to be a "Commonwealth agency" for purpose of the immunity statutes.

The Pennsylvania Supreme Court's decision in *Snead* is not novel. When determining application of sovereign immunity under federal law, the Third Circuit, likewise, looks to whether an entity's liability will become an obligation of the government treasury. Reaffirming that the "most important" factor for determining application of sovereign immunity is whether the state treasury will be

impaired, the Third Circuit held that SEPTA, an entity created by the Pennsylvania Commonwealth and with "about 27% of its revenue [coming] from the state government," could not invoke sovereign immunity.  *Cooper v. SEPTA*, 548 F.3d 296, 299 (3d Cir. 2008).  Other factors supporting that conclusion, which also exist here, were that SEPTA had a separate corporate existence and could make contracts on its own behalf.  *Id.* at 300.  The Third Circuit reached its conclusion despite SEPTA being exempt from taxes (like PHEAA is) and possessing certain public powers (like PHEAA's activity in disbursing education grants).  PHEAA is even more obviously non-governmental, with *none* of its revenue from state coffers, and a statutory mandate that its liabilities *cannot* affect the public purse.

Ignoring these recent, controlling precedents, PHEAA relies instead on an unpublished 1999 opinion of the Philadelphia Court of Common Pleas, *Heiser v. SEPTA*, which predates the Pennsylvania Supreme Court's 2009 decision in *Snead*, and which makes no effort to examine the effect of the 1974 or 1988 amendments to the wage statutes.  *Snead*, not *Heiser*, controls.

### B. The Sovereign Immunity Statute Does Not Trump the Wage Laws.

Even if the sovereign immunity statutes were *otherwise* applicable to PHEAA, immunity does not protect PHEAA from its obligations under the wage laws.  The 1974 amendments to the wage law cannot be abrogated by implication by the adoption of the immunity statutes in 1978.   Under the Statutory

14

Construction Act, 1 Pa. Stat. Ann. §§ 1921 *et seq.*, "an implication alone cannot be interpreted as abrogating existing law.  The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded." *Metro. Prop. & Liab. Ins. Co. v. Ins. Comm'r of Commw. of Pa.*, 580 A.2d 300, 302 (Pa. 1990).  Not only does the immunity statute *not* affirmatively repeal the 1974 or 1988 amendments to the wage law, but rather, the immunity statute expressly recognizes that Pennsylvania' immunity doctrine had contours and limits *before* the immunity statute was passed.  The first sovereign immunity statute, enacted in 1978, says, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall *continue* to enjoy sovereign immunity and official immunity and *remain* immune from suit *except as the General Assembly shall specifically waive the immunity*."  1 Pa. Stat. Ann. § 2310 (emphasis added).  The General Assembly had already statutorily removed Commonwealth exclusion from the minimum wage law in the 1974 amendment.  Enactment of the 1978 immunity statute made no pretense to create immunity where it had not previously existed, and the amendments to the wage laws addressing Commonwealth employees were unaltered.

Sovereign immunity in Pennsylvania was previously a common-law creation, but the Pennsylvania Supreme Court held on July 14, 1978 that the historical bases for sovereign immunity from *tort* liability were no longer valid,

and abrogated it. *Mayle v. Penn. Dept. of Highways*, 388 A.2d 709 (Pa. 1978). The General Assembly promptly responded on Sept. 28, 1978 with the statute, now 1 Pa. Stat. Ann. § 2310, to restore what *Mayle* took away. Nothing in the immunity statute expressly or impliedly alters the landscape of immunity doctrine other than to reestablish what *Mayle* took away. On the contrary, the legislature's use of the phrases "continue to enjoy" and "remain immune" is deliberate in the statute, returning the law to its pre-*Mayle* circumstance.

The amendment to the wage laws that *removed* the exclusion for the Commonwealth was unaltered. If sovereign immunity had been applicable to protect the Commonwealth from the wage statutes *ab initio*, then the express exemption for Commonwealth employees in the 1968 wage act (removed in 1974) would never have been necessary in the first instance. And the *added* provision in 1974 to exclude *certain* Commonwealth employees would likewise be surplusage if Commonwealth employers generally could claim sovereign immunity.

Notably the Attorney General's 1976 opinion nowhere mentions sovereign immunity; no such immunity from the wage statue was supposed. PHEAA's motion to dismiss should be denied.

## IV.   CONCLUSION

The plain language of the Pennsylvania wage statutes and the amendments in 1974 and 1988 dictate that PHEAA is subject to Pennsylvania wage laws. The

General Assembly has directly addressed Commonwealth employees in the wage statutes, rather than subsuming them in the blanket of sovereign immunity, which even the Attorney General did not invoke in 1976.  Entities like PHEAA whose debts are not liabilities of the Commonwealth may not claim sovereign immunity. PHEAA's motion to dismiss should be denied.

Respectfully submitted,

**McCarthy Weisberg Cummings, P.C.**

October 16, 2012                                      /s/ Larry A. Weisberg_____
Date                                                       Larry A. Weisberg, Esquire
                                                             PA Bar I.D. #: PA83410
                                                             2041 Herr Street
                                                             Harrisburg, PA 17103-1624
                                                             (717) 238-5707
                                                             (717) 233-8133 (FAX)
                                                             lweisberg@mwcfirm.com

                                                             George A. Hanson (*Pro hac vice*)
                                                             hanson@stuevesiegel.com
                                                             Lee R. Anderson (*Pro hac vice*)
                                                             anderson@stuevesiegel.com
                                                             STUEVE SIEGEL HANSON LLP
                                                             460 Nichols Road, Suite 200
                                                             Kansas City, MO 64112
                                                             (816) 714-7100

## <u>CERTIFICATION OF WORD COUNT</u>
## <u>PURSUANT TO FED. R. CIV. P. 11 AND L.R. 7.8(B)(2)</u>

The undersigned, as counsel for Plaintiff, hereby certifies that the Brief in Opposition of Defendant's Motion to Dismiss Count II of Plaintiff's Complaint does not exceed 5,000 words, and in submitting this certification, counsel has relied upon the word count feature of the word processing system used to prepare the Brief. According to the word processing system used to prepare the Brief, the actual number of words in the Brief is 3,678.

Respectfully submitted,

McCarthy Weisberg Cummings, P.C.

<u>October 16, 2012</u>
Date

<u>/s/ Larry A. Weisberg</u>
Larry A. Weisberg, Esquire
PA Bar I.D. #: PA83410
lweisberg@mwcfirm.com
2041 Herr Street
Harrisburg, PA 17103-1624
(717) 238-5707
(717) 233-8133 (FAX)
*Attorney for Plaintiff*

## IN THE UNITED STATE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY LANG, SR., individually    :
and on behalf of all others similarly    :    **Civil Action  No. 1:12-cv-1247**
situated,    :
       **Plaintiffs**    :
       **v.**    :    **Judge Jones**
**PENNSYLVANIA HIGHER**    :
**EDUCATION ASSISTANCE**    :
**AGENCY,**    :
       **Defendant**    :

## CERTIFICATE OF SERVICE

I, Larry A. Weisberg, Esquire, hereby certify that on October 16, 2012, a copy of Plaintiff's Brief in Opposition of Defendant's Motion to Dismiss Counts II of Plaintiff's Complaint, has been filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing System.  The ECF System's electronic service of the Notice of Electronic Case Filing constitutes service on all parties who have consented to electronic service.:

Daniel B. Huyett, Esquire
Kenneth D. Kleinman, Esquire
Jo Bennett, Esquire
Neil C. Schur, Esquire
Stevens & Lee, PC
1818 Market Street, 29th Floor
Philadelphia, PA 1910

October 16, 2012          /s/ Larry A. Weisberg_____
Date          Larry A. Weisberg, Esquire
         McCarthy Weisberg Cummings, P.C.
         PA Bar I.D. #: PA83410
         2041 Herr Street
         Harrisburg, PA 17103-1624
         (717) 238-5707
         (717) 233-8133 (FAX)
         lweisberg@mwcfirm.com