# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ANTHONY LANG and AHKEEM BROWN, individually and on behalf of all others similarly situated, | : : : : | Case No. 12-cv-1247 |
| Plaintiffs, | : : | **(Judge John E. Jones III)** |
| v. | : : | |
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, | : : : : | |
| Defendant. | : : | |

## PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO <u>DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

Daniel B. Huyett (PA 21385)
Kenneth D. Kleinman (PA 31770)
Jo Bennett (PA 78333)
Neil C. Schur (PA 79068)
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Phone: 215-751-2883
Fax: 610-988-0869
dbh@stevenslee.com
kdk@stevenslee.com
jb@stevenslee.com
ncsc@stevenslee.com

Attorneys for Defendant Pennsylvania Higher Education Assistance Agency

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................4

III.  ARGUMENT.......................................................................................6

    A.   Standard Governing A Motion To Dismiss Under Federal Rules
        Of Civil Procedure 12(b)(6) And 12(b)(1)............................................7

        1.   Rule 12(b)(6)..........................................................................7

        2.   Rule 12(b)(1)..........................................................................8

    B.   The Court Should Dismiss Count I Pursuant To Federal Rules
        Of Civil Procedure 12(b)(1) And 12(b)(6) Because The
        Eleventh Amendment Immunizes PHEAA From Private Suit
        Under The FLSA.................................................................................9

        1.   Eleventh Amendment Immunity, Generally..............................9

        2.   PHEAA Is An Agency Of The Commonwealth Of
            Pennsylvania. ........................................................................10

            a.   Payment Of A Judgment Against PHEAA Would
               Come From The Commonwealth...................................13

               i.   Whether Payment Will Come From The
                   State Treasury.....................................................13

                ii.   Whether The Agency Has Sufficient Funds
                   To Satisfy The Judgment ....................................15

                iii.   Whether The Sovereign Has Immunized
                   Itself From Responsibility For The
                   Agency's Debts ...................................................17

               iv.   Source Of Funds..................................................17

                v.   Balancing Of The Sub-Factors............................18

            b.   The Status of PHEAA Under State Law Is That Of
               A Commonwealth Agency. ............................................19

i

i.      How State Law Treats The Agency
        Generally ............................................................... 19

ii.     Whether The Agency Is Separately
        Incorporated ........................................................ 24

iii.    Whether The Agency Can Sue And Be Sued
        In Its Own Right .................................................. 25

iv.     Whether The Agency Is Immune From State
        Taxation ................................................................ 26

v.      Balancing Of The Sub-Factors ............................ 27

c.      Pennsylvania Exercises Absolute Control Over
        PHEAA. ........................................................................... 27

d.      Totality Of Factors ......................................................... 32

IV.     CONCLUSION ........................................................................ 33

# TABLE OF AUTHORITIES

**CASES**

*Alden v. Maine*,
    527 U.S. 706 (1999)..................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................7, 8

*Baylor v. Cortes*,
    No. 1:CV-08-1060, 2008 WL 4224803 (M.D. Pa. Sept. 10, 2008) ...........2, 7, 30

*Beardsley v. State Emps.' Ret. Bd.*,
    691 A.2d 1016 (Pa. Commw. Ct. 1997) ...........................................................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................7

*Benn v. First Judicial Dist. of Pa.*,
    426 F.3d 233 (3d Cir. 2005) ...................................................................9, 10, 32

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
    475 F.3d 524 (3d Cir. 2007) ............................................................................10

*Brennan v. Univ. of Kan.*,
    451 F.2d 1287 (10th Cir. 1971) ......................................................................28

*C.H., ex rel. Z.H. v. Oliva*,
    226 F.3d 198 (3d Cir. 2000) ..............................................................................9

*Christy v. Pa. Turnpike Comm'n*,
    54 F.3d 1140 (3d Cir. 1995) ...................................................................*passim*

*Cooper v. Se. Pa. Transp. Auth.*,
    548 F.3d 296 (3d Cir. 2008) ...................................................................*passim*

*Febres v. Camden Bd. of Educ.*,
    445 F.3d 227 (3d Cir. 2006) ............................................................................19

*Feesers, Inc. v. Michael Foods, Inc.*,
   591 F.3d 191 (3d Cir. 2010) ..........................................................5, 14

*Fitchik v. N.J. Transit Rail Operations, Inc.*,
   873 F.2d 655 (3d Cir. 1989) ...........................................................*passim*

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ...................................................................7

*Grimshaw v. South Fla. Water Mgmt. Dist.*,
   195 F. Supp. 2d 1358 (S.D. Fla. 2002) ...................................................3

*Guirguis v. Movers Specialty Servs., Inc.*,
   346 F. App'x 774 (3d Cir. 2009) .............................................................8

*Heppler v. Pa. Liquor Control Bd.*,
   No. 10-3430, 2011 WL 2881221 (E.D. Pa. July 18, 2011)........10, 14, 27, 29, 30

*Indiantown Cogeneration, L.P. v. Century Coal, LLC*,
   No. 3:09CV398, 2011 WL 3682778 (W.D.N.C. Aug. 23, 2011) .......................3

*Int'l Union of Bricklayers & Allied Craftworkers, Local 5 v. Banta Tile &*
   *Marble*, No. 4:07-CV-1245, 2009 WL 4906525
   (M.D. Pa. Dec. 15, 2009)...............................................................5, 14

*Larsen v. State Emps. Ret. Sys.*,
   553 F. Supp. 2d 403 (M.D. Pa. 2008)................................9, 10, 30, 31

*Linko v. Amer. Educ. Servs.*,
   No. 1:12-cv-355, 2012 WL 1439052
   (M.D. Pa. Apr. 26, 2012)..............................................................*passim*

*MCI Telecomm. Corp. v. Bell Atl. Pa.*,
   271 F.3d 491 (3d Cir. 2001) ...................................................................9

*Misener Marine Constr., Inc. v. Norfolk Dredging Co.*,
   No. CV 404-146, 2008 WL 2278132 (S.D. Ga. Mar. 28, 2008)....................3, 4

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977) ...................................................................8

iv

*Pa. Dep't of Revenue v. Bookser*,
   3 Pa. D.&C.4th 566 (Pa. Com. Pl. 1989)...........................................................23

*Packard v. Provident Nat'l Bank*,
   994 F.2d 1039 (3d Cir. 1993) ...............................................................................8

*Perano v. Twp. of Tilden*,
   423 F. App'x 234 (3d Cir. 2011) ...........................................................................8

*Petruska v. Gannon Univ.*,
   462 F.3d 294 (3d Cir. 2006) .................................................................................8

*In re Pettis*,
   146 B.R. 653 (E.D. Pa. 1992) .............................................................................24

*PHEAA v. Barksdale*,
   449 A.2d 688 (Pa. Super. Ct. 1982).....................................................................23

*PHEAA v. Reid*,
   15 Pa. D. & C.3d 661 (Pa. Com. Pl. 1980)....................................................22, 23

*PHEAA v. State Emps.' Ret. Bd.*,
   617 A.2d 93 (Pa. Commw. Ct. 1992), *aff'd*, 636 A.2d 629 (Pa. 1994).............23

*PHEAA v. Xed*,
   456 A.2d 725 (Pa. Commw. Ct. 1983) .................................................................22

*PTC Career Inst., Inc. v. Evans*,
   No. 94-1290, 1994 WL 243845 (E.D. Pa. June 6, 1994) ...................................24

*Regents of the Univ. of Cal. v. Doe*,
   519 U.S. 425 (1997)..............................................................................................18

*Richmond v. PHEAA*,
   297 A.2d 544 (Pa. Commw. Ct. 1972) .................................................................23

*Skehan v. State Sys. of Higher Educ.*,
   815 F.2d 244 (3d Cir. 1987) ...............................................12, 16, 20, 24, 25, 30

*U.S. ex rel. Oberg v. PHEAA*,
   No. 01:07-cv-960, (E.D. Va. Dec. 5, 2012)....................................13, 17, 18, 33

v

*Walters v. United States*,
  No. 4:CV-07-0990, 2008 WL 191476 (M.D. Pa. Jan. 22, 2008) ........................8

*Williams v. Temple Univ. Hosp.*,
  400 F. App'x 650 (3d Cir. 2010) .........................................................................8

### CONSTITUTIONS

U.S. Const. amend. XI .................................................................................*passim*

Pa. Const. art. III, § 24 ...............................................................14, 15, 16, 31

Pa. Const. art. IV, § 8 ...............................................................................29

Pa. Const. art. VI, § 7 ...............................................................................29

### STATUTES, RULES & REGULATIONS

Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ....................................................4

Pennsylvania Business Corporation Law of 1988,
  15 Pa. C.S.A. §§ 1101–4162. ................................................................12

Pennsylvania Minimum Wage Act,
  43 P.S. §§ 333.101–333.115 ....................................................................5

Pennsylvania Public Official and Employee Ethics Act,
  65 Pa. C.S.A. § 1102 ...............................................................................22

Pennsylvania Wage Payment and Collection Law,
  43 P.S. §§ 260.1–260.45 .............................................................................4

24 P.S. §§ 5101–5112 ...................................................................................20

24 P.S. § 5101 ..............................................................................12, 24, 27

24 P.S. § 5102 ..........................................................................11, 16, 20, 24

24 P.S. § 5103 ...............................................................................28, 29, 30

24 P.S. § 5104 ............................................................................................*passim*

24 P.S. § 5105 ...............................................................11, 20, 21, 22, 26, 31

24 P.S. § 5107 ...............................................................................26

24 P.S. § 5108 ...........................................................16, 21, 30, 31

24 P.S. § 5151 ...............................................................................22

71 P.S. § 111.2 .....................................................................28, 29, 30

71 P.S. § 732-204 ...............................................21, 22, 26, 31, 32

72 P.S. § 306 .........................................................14, 15, 16, 31

72 P.S. § 307 .........................................................14, 15, 16, 31

72 P.S. § 1501 .......................................................14, 15, 16, 31

72 P.S. § 1502 .......................................................14, 15, 16, 31

42 Pa. C.S.A. § 761 .......................................................................23

71 Pa. C.S.A. § 5931 .....................................................................31

Fed. R. Civ. P. 12 ....................................................................*passim*

Pa. R. App. P. 106 .........................................................................23

**OTHER AUTHORITIES**

GASB Statement No. 14 (1991) ...................................................3

GASB Statement No. 39 (2002) ...................................................3

## I. **INTRODUCTION**

Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA") moves the Court for entry of an Order dismissing Plaintiffs' First Amended Complaint with prejudice as to PHEAA, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

The Court should dismiss Count I (the only remaining count against PHEAA) because PHEAA is an arm of the Commonwealth of Pennsylvania and therefore immune from liability pursuant to the Eleventh Amendment to the United States Constitution.  In an "after-the-fact" effort to avoid this result, Plaintiffs recently amended their Complaint to add "allegations" addressing Eleventh Amendment immunity in anticipation of this motion, rather than alleging facts that state a claim under the FLSA.  (*See* First Amended Complaint ("FAC"), ¶¶ 28–51.) But many of Plaintiffs' latest "allegations" are nothing more than arguments, conclusions of law, and naked assertions, couched as "allegations" in a transparent attempt to force the Court to accept whatever Plaintiffs say as true.  (*See* FAC, ¶¶ 28–51.)

Plaintiffs' new "allegations" are fundamentally flawed in several respects. First, Plaintiffs now "allege" numerous conclusions of law.  *See, e.g.,* FAC, ¶¶ 28,

---

[1]   Defendants James L. Preston, Stephanie Foltz, Todd Mosko and Matthew Sessa and the John Doe Defendants separately moved to dismiss the First Amended Complaint.  (Doc. 93.)

1

29, 34, 51.  These allegations are not well-pleaded and are, in many instances, contrary to judicially noticeable facts.[2]  As the Supreme Court has explained, in ruling on a motion under Rule 12(b)(6), a district court should disregard legal conclusions and naked assertions before determining whether a complaint states a plausible claim for relief.  Once Plaintiffs' legal conclusions, arguments and unfounded assertions are disregarded, the remaining allegations fail to undercut PHEAA's right to Eleventh Amendment immunity.

Second, a number of Plaintiffs' new "allegations," even if properly pleaded, are irrelevant to any of the relevant factors under the Third Circuit's "arm of the state" test.  *See, e.g.,* FAC, ¶¶ 36, 37, 39, 40–41, 43–45.

Third, Plaintiffs have added numerous allegations that mislead the Court by quoting language out of context or failing to provide relevant background.  For example, Plaintiffs allege PHEAA "has publicly represented that it is 'not considered part of the primary government' of Pennsylvania."  (FAC, ¶ 50.) Plaintiffs' suggestion that this was a highly relevant or damning admission of PHEAA is unfounded.  Plaintiffs' partial quotation relates to reporting for accounting purposes; the full statement is revealing:  "We are a discretely

---

[2]   The Court need not accept as true an allegation that is contrary to law.  *Baylor v. Cortes*, No. 1:CV-08-1060, 2008 WL 4224803, at *2 (M.D. Pa. Sept. 10, 2008) (granting motion to dismiss complaint containing only "bald assertions or incorrect legal conclusions").

presented component unit of the Commonwealth of Pennsylvania.  That means that

our financial information is included in the financial statements of the

Commonwealth of Pennsylvania but we are not considered part of the primary

government."  PHEAA Annual Financial Report, June 30, 2007 and 2006,

*available at* http://www.pheaa.org/about/pdf/financial-

reports/annual/2007AuditedFinancialStatements.pdf.

     Put into context, this "fact" supports PHEAA's right to immunity as an arm

of the state.  PHEAA is subject to generally accepted accounting standards

promulgated by the Governmental Accounting Standards Board ("GASB").  Under

those standards, PHEAA is treated for accounting purposes as a "component unit"

of the Commonwealth.  *See* GASB Statement No. 14 (1991), *amended by*, GASB

Statement No. 39 (2002), of which the Court can take judicial notice.[3]  A number

of courts have found component units of state government, like PHEAA, to be

arms of the state immune from private suit under the Eleventh Amendment.  *See,*

*e.g., Grimshaw v. South Fla. Water Mgmt. Dist.*, 195 F. Supp. 2d 1358, 1365–66 &

n.7 (S.D. Fla. 2002); *Indiantown Cogeneration, L.P. v. Century Coal, LLC*, No.

3:09CV398, 2011 WL 3682778, at *6–7 (W.D.N.C. Aug. 23, 2011); *Misener*

---

[3]   *See* http://www.gasb.org/st/index.html.

*Marine Constr., Inc. v. Norfolk Dredging Co.*, No. CV 404-146, 2008 WL 2278132, at *7–8 (S.D. Ga. Mar. 28, 2008).

Similarly, Plaintiffs plead a number of "facts" based on a "Final Decision" issued in a Right to Know Act lawsuit (FAC, ¶¶ 32, 41, 43, 45, 48, 49), but misleadingly ignore the portions of the decision that highlight the tens of millions of dollars PHEAA provides to Pennsylvanians seeking access to higher education each year. *See, e.g.,* Right to Know Act Final Decision at 4, 6–8 ("In the 2005–06 academic year, PHEAA contributed $170 million from its earnings to fund critical programs for Pennsylvania students. In the 2006–07 academic year, PHEAA will contribute approximately $220 million toward the cost of its numerous student programs.").

Contrary to Plaintiffs' misleading portrayal of PHEAA, revenues from its loan servicing and guaranteeing activities are used in furtherance of its statutory mission – creating affordable access to higher education for the residents of the Commonwealth through its substantial contributions to the state grant program and other important programs. *Id.*

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Anthony Lang's ("Lang") original Complaint ("Compl.") alleged in Count I that PHEAA violated the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"), and in Count II that PHEAA violated the Pennsylvania Wage Payment

and Collection Law, 43 P.S. §§ 260.1–260.45, and the Pennsylvania Minimum

Wage Act, 43 P.S. §§ 333.101–333.115.

On September 11, 2012, PHEAA moved to dismiss Count II of the original

Complaint, alleging state law claims, on the basis of Pennsylvania's Sovereign

Immunity Act, and on January 18, 2013, the Court granted PHEAA's motion,

holding: "It is clear from a review of PHEAA's governing statutes that the General

Assembly intended that PHEAA be a Commonwealth agency." (Doc. 52, Mem. &

Order. at 9.) The Court further held:

> [A] judgment against PHEAA "would, in essence, injure
> the state." Although PHEAA is somewhat insulated from
> the Treasury by 24 P.S. § 5104(8), which provides that
> "no debt of the agency shall be a debt of the
> Commonwealth," ultimately PHEAA's assets are assets
> of the Commonwealth. . . . The services that PHEAA
> provides are for the general welfare of the people of the
> Commonwealth and so it is entitled to sovereign
> immunity because judgment against it would injure the
> state.

(*Id.* at 10.) These rulings are particularly important to PHEAA's motion to dismiss

Count I because they are the law of this case.[4]

---

[4]  *See Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191, 207 (3d Cir. 2010) (the
law of the case doctrine posits that when a court decides upon a rule of law, that
decision should continue to govern the same issues in subsequent stages in the
same case, absent extraordinary circumstances); *see also Int'l Union of
Bricklayers & Allied Craftworkers, Local 5 v. Banta Tile & Marble*, No. 4:07-
CV-1245, 2009 WL 4906525, at *2–3 (M.D. Pa. Dec. 15, 2009) (Jones, J.)
(applying doctrine).

Then, on March 21, 2013, PHEAA moved for judgment on the pleadings on Count I (the sole remaining count), alleging a federal law violation, on the grounds that PHEAA is an arm of the Commonwealth of Pennsylvania and therefore immune from private suit pursuant to the Eleventh Amendment to the United States Constitution.  (Doc. 60.)  On April 2, 2013, PHEAA filed its brief in support of its motion.  (Doc. 63.)

Reacting to PHEAA's Eleventh Amendment immunity arguments, instead of opposing the motion, on April 24, 2013, Plaintiff moved for allowance to file a First Amended Complaint.  (Doc. 68.)  Plaintiff sought in his motion to add certain allegations to respond to PHEAA's assertion of immunity.  After the Court granted the motion, Plaintiffs filed their First Amended Complaint.  (Doc. 81.)

The factual basis Plaintiffs plead to support their claim of an FLSA violation remained the same.  In a nutshell, Plaintiffs allege that because PHEAA-employed call center employees must be prepared to receive calls at the start of their shifts, they must report to work before their scheduled start times to log into their computers and software applications, but PHEAA does not pay them for that time. (FAC, ¶¶ 1, 14–22.)

## III. <u>ARGUMENT</u>

PHEAA moves the Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

A. **Standard Governing A Motion To Dismiss Under Federal Rules Of Civil Procedure 12(b)(6) And 12(b)(1)**

   1.   Rule 12(b)(6)

Under the two-pronged approach articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and later formalized in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Conclusions of law and unwarranted inferences of fact, like the recently added "allegations" in Plaintiffs' First Amended Complaint, need not be accepted as true for purposes of Rule 12(b)(6). *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Nor must the Court accept as true unsupported conclusions. *Iqbal*, 556 U.S. at 555, 563 n.8; *Twombly*, 550 U.S. at 555; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679; *Fowler*, 578 F.3d at 210–11. Finally, the Court need not accept as true an allegation that is contrary to law. *Baylor*, 2008 WL 4224803, at *2.

Next, the district court must identify "the 'nub' of the . . . complaint – the well pleaded, nonconclusory factual allegation[s]." *Iqbal*, 556 U.S. at 679. Taking

these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *Id.*

Courts in this Circuit have not hesitated to dismiss claims after disregarding those allegations that are not well-pleaded, and this Court should do the same. *See, e.g., Perano v. Twp. of Tilden*, 423 F. App'x 234, 238–39 (3d Cir. 2011); *Williams v. Temple Univ. Hosp.*, 400 F. App'x 650, 653 (3d Cir. 2010); *Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x 774 (3d Cir. 2009).

### 2.   Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), in turn, challenges a court's subject-matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *Walters v. United States*, No. 4:CV-07-0990, 2008 WL 191476, at *2 n.1 (M.D. Pa. Jan. 22, 2008) (Jones, J.) (noting that the court's objective in evaluating a motion to dismiss pursuant to Rule 12(b)(1) is to "'satisfy itself whether it has the power to hear the case'"). As the party asserting jurisdiction, a plaintiff bears the burden of showing that his or her claims are properly before the Court. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

**B.  The Court Should Dismiss Count I Pursuant To Federal Rules Of Civil Procedure 12(b)(1) And 12(b)(6) Because The Eleventh Amendment Immunizes PHEAA From Private Suit Under The FLSA.**

**1.   Eleventh Amendment Immunity, Generally**

The Eleventh Amendment "has been interpreted to make states generally immune from suit by private parties in federal court." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 502 (3d Cir. 2001) (citations omitted); *Larsen v. State Emps. Ret. Sys.*, 553 F. Supp. 2d 403, 411 (M.D. Pa. 2008) (Jones, J.).  The "central purpose" of the doctrine of sovereign immunity is to "accord the States the respect owed them as joint sovereigns" and to "protect[] against the indignity of any kind of suit whatsoever."  *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239-40 (3d Cir. 2005) (internal citations omitted).

This immunity extends to state agencies such as PHEAA.  *See MCI*, 271 F.3d at 503 (citing *C.H., ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000) (*en banc*)); *Larsen*, 553 F. Supp. 2d at 411.  And with regard to the FLSA claim Plaintiffs pursue here, the United States Supreme Court has held that a State's Eleventh Amendment immunity bars a private action under the FLSA.  *Alden v. Maine*, 527 U.S. 706, 748 (1999).

The test to determine whether an entity such as PHEAA is an arm of the state entitled to immunity entails three distinct inquiries:  (1) whether, in the event

9

the plaintiff prevails, the payment of the judgment would come from the state;

(2) the status of the agency under state law; and (3) what degree of autonomy the

agency enjoys. *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d

Cir. 1989) (*en banc*).  The three factors are equal in importance.  *See Cooper v. Se.

Pa. Transp. Auth.*, 548 F.3d 296, 302 (3d Cir. 2008) ("State dignity encompasses

all three factors – we give them equal consideration….").

Several cases that predate the Third Circuit's 2005 decision in *Benn, supra*,

held that the first factor was the most important, but these decisions have been

overruled.  Following *Benn*, a number of courts have found entities to be arms of

the Commonwealth (and therefore immune) even though the first factor was not

satisfied.  *See, e.g., Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546–

48 (3d Cir. 2007); *Larsen*, 553 F. Supp. 2d at 411 & n.4; *Heppler v. Pa. Liquor

Control Bd.*, No. 10-3430, 2011 WL 2881221, at *5–8 (E.D. Pa. July 18, 2011).

## 2. **PHEAA Is An Agency Of The Commonwealth Of Pennsylvania.**

The application of the three *Fitchik* factors identified above to PHEAA leads

readily to the conclusion that PHEAA is an arm of the Commonwealth of

Pennsylvania, immune from private suit under the Eleventh Amendment, and not

an appropriate party to this lawsuit.

In establishing PHEAA, the Commonwealth decided to exercise its

sovereignty by delegating to one of its agencies an important and essential

10

governmental function, *i.e.*, financing the education of its citizens.  The

Pennsylvania legislature created PHEAA by statute, proclaiming explicitly that

PHEAA "will be performing an essential governmental function."  24 P.S. §

5105.6 (stating further: "creation of the agency is in all respects for the benefit of

the people of the Commonwealth, for the improvement of their health and welfare,

and for the promotion of the economy, and that such purposes are public purposes

and the agency will be performing an essential governmental function."); *see also*

24 P.S. § 5102 (PHEAA was created to "improve the higher educational

opportunities of persons who are residents of this State.").  Of course, this is

precisely what this Court determined already, when it held:  "The services that

PHEAA provides are for the general welfare of the people of the

Commonwealth…." (Doc. 52 at 10.)

PHEAA easily satisfies the three *Fitchik* factors.  First, payment of a

judgment against PHEAA would necessarily come from the Commonwealth

because the Commonwealth owns PHEAA's assets.  (*See id.* ("[U]ltimately

PHEAA's assets are assets of the Commonwealth. . . .".)  Second, Pennsylvania's

statutes and case law repeatedly and consistently treat PHEAA as an agency of the

Commonwealth.  Finally, the Commonwealth pervasively controls PHEAA and

allows it little independent autonomy.  Plaintiffs' latest "allegations" do not alter this result.

For example, Plaintiffs spend nearly 20 paragraphs of their First Amended Complaint attempting to analogize PHEAA to a private, for-profit corporation. (FAC, ¶¶ 31–49.)  But such allegations are irrelevant to the Eleventh Amendment immunity analysis, as they have no bearing on any of the pertinent factors or sub-factors.  Worse, Plaintiffs mislead the Court.  PHEAA is a public corporation statutorily formed by the General Assembly, not a private corporation owned by shareholders under the Pennsylvania Business Corporation Law of 1988, 15 Pa. C.S.A. §§ 1101–4162.  *See* 24 P.S. § 5101 (PHEAA is a "body corporate and politic constituting a ***public*** corporation and government instrumentality") (emphasis added).  And PHEAA's status as a public corporation does not preclude a finding that PHEAA is an arm of the Commonwealth.  *See Skehan v. State Sys. of Higher Educ.*, 815 F.2d 244, 244 (3d Cir. 1987) (finding a "body corporate and government instrumentality" to be an arm of the Commonwealth); *see also* Doc. 52 at 8–10 (noting PHEAA is a public corporation and concluding that: "It is clear from a review of PHEAA's governing statutes that the General Assembly intended that PHEAA be a Commonwealth agency" and "a judgment against it would "injure the state.").

Similarly, Plaintiffs' allegations that: PHEAA engages in activities outside of Pennsylvania (*see* FAC, ¶¶ 43–45); PHEAA has formed limited liability companies (*see* FAC, ¶ 47); and a PHEAA employee responded in a newspaper to criticism of PHEAA's employment bonus practices (*see* FAC, ¶ 42) likewise have no impact on any of the relevant factors of the "arm of the state" analysis.

### a. Payment Of A Judgment Against PHEAA Would Come From The Commonwealth.

PHEAA satisfies the first *Fitchik* factor – whether the payment of a judgment would come from the state. This factor, often referred to as the "Treasury factor," includes three sub-factors:  (1) whether payment will come from the state's treasury; (2) whether the agency has the money to satisfy the judgment; and (3) whether the sovereign has immunized itself from responsibility for the agency's debts. *Cooper*, 548 F.3d at 299 n.4.

### i. Whether Payment Will Come From The State Treasury

The first sub-factor is whether payment will come from the State's Treasury. *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1145 (3d Cir. 1995). This Court already has held that a judgment against PHEAA "would, in essence, injure the state." (Doc. 52 at 9.). *See also U.S. ex rel. Oberg v. PHEAA*, No. 01:07-cv-960, slip op. at 9 (E.D. Va. Dec. 5, 2012) ("[A]ny judgment against PHEAA would necessarily come out of state treasury funds."). Similarly, the Court has also

13

concluded already that "ultimately PHEAA's assets are assets of the Commonwealth. . . ." (Doc. 52 at 10.) *See also Linko v. Amer. Educ. Servs.*, No. 1:12-cv-355, 2012 WL 1439052, at *4 (M.D. Pa. Apr. 26, 2012) (Jones, J.) (finding that debt owed to PHEAA was "owed to the Commonwealth").

In this case, the Court's holdings on this factor are the law of the case. *See Feesers*, 591 F.3d at 207; *Banta Tile*, 2009 WL 4906525, at *2–3. They are also well supported, as payment of a judgment will necessarily come from the State Treasury. This is so because the law requires that all of PHEAA's earnings be deposited into the State Treasury. 24 P.S. § 5104(3). Once deposited, these funds must stay in the Treasury until the State Treasurer gives PHEAA permission to spend them. Pa. Const. art. III, § 24; 72 P.S. §§ 306, 307, 1501, 1502. Specifically, "[n]o money shall be paid from *any of the funds of the State Treasury, except upon warrant of the State Treasurer*, issued upon requisition pursuant to law . . . ." 72 P.S. § 307 (emphasis added). Moreover, "[n]o money shall be paid out of any fund in the State Treasury … until a requisition therefor shall have been presented to … the State Treasurer." 72 P.S. § 1501.

As a result, payment of any judgment against PHEAA will necessarily come from the State Treasury. *Cf. Heppler*, 2011 WL 2881221, at *5–8 (finding

14

Treasury factor not satisfied where entity's moneys resided in a separate State Stores Fund outside the Treasury).

ii. **Whether The Agency Has Sufficient Funds To Satisfy The Judgment**

With regard to the second sub-factor, PHEAA does not have sufficient funds to satisfy a judgment in this case because the Commonwealth owns and controls all of PHEAA's earnings.  That is precisely what this Court has concluded already when it held that "ultimately PHEAA's assets are assets of the Commonwealth . . . ."  (Doc. 52 at 10.)  *See also Linko*, 2012 WL 1439052, at *4 (finding that debt owed to PHEAA was "owed to the Commonwealth").

Like the holdings cited above, this holding is also the law of the case and makes perfect sense.  PHEAA's earnings must be deposited into the State Treasury and must stay there until the State Treasurer gives PHEAA permission to spend them.  Pa. Const. art. III, § 24; 24 P.S. § 5104(3); 72 P.S. §§ 306, 307, 1501, 1502.  Simply put, PHEAA needs permission from the Commonwealth to spend the money because it is the Commonwealth's money.

Plaintiffs' conclusory "allegation" that PHEAA's earnings are available to PHEAA and may be utilized at the discretion of PHEAA's board of directors (*see* FAC, ¶ 31) cannot be accepted as true because it is a conclusion of law.  Moreover, the provision Plaintiffs cite, 24 P.S. § 5104, is subject to the material limitations

15

Pennsylvania imposes on PHEAA's spending.  For example, PHEAA may only use the funds it has deposited into the State Treasury for carrying out the "purposes of the agency."  24 P.S. § 5104(3).  *See also* 24 P.S. § 5102 (stating that the purpose of PHEAA is "to improve the higher educational opportunities of persons who are residents of this State").  And, as noted above, PHEAA must get permission from the State Treasurer before making any expenditures.  Pa. Const. art. III, § 24; 2 P.S. §§ 306, 307, 1501, 1502.

PHEAA's spending is also subject to audit by the Commonwealth's Auditor General.  24 P.S. §§ 5104(1.1), 5108.  Finally, PHEAA must report annually on its year-end financial activities to the Governor and the legislature.  24 P.S. § 5108.  These factors were significant to the Third Circuit in *Skehan*.  *See Skehan*, 815 F.2d at 248 (concluding the State System of Higher Education was "subject to substantial state supervision and control" because, in part, it was subject to an annual audit and its constituent units were required to submit an annual report to the governor and committees of the Pennsylvania senate and house of representatives).  Finally, the Commonwealth's control over PHEAA's spending is confirmed by the fact that PHEAA's board members are themselves selected, removed, and controlled by the Commonwealth, and most are elected Commonwealth legislators, as discussed *infra*.

16

Plaintiffs' "allegation" that PHEAA has hundreds of millions of dollars in assets and earns hundreds of millions more in annual revenues (*see* FAC, ¶ 33) is both misleading and irrelevant, as all such funds are controlled and owned by the Commonwealth, not PHEAA.

### iii.  Whether The Sovereign Has Immunized Itself From Responsibility For The Agency's Debts

With regard to the third sub-factor, while it is true that PHEAA's Enabling Act provides that no obligation of PHEAA shall be a debt of the State, *see, e.g.,* 24 P.S. § 5104(8) (FAC, ¶ 30), this Court has rejected this as a significant factor.  The Court has held already that a judgment against PHEAA "would, in essence, injure the state" because "ultimately PHEAA's assets are assets of the Commonwealth." (Doc. 52 at 10.)  The Court's ruling is manifestly correct because the Commonwealth cannot actually immunize itself against PHEAA's debts, insofar as PHEAA's earnings belong to the Commonwealth.  (Doc. 52 at 10); *Oberg*, No. 01:07-cv-960, slip op. at 9; *Linko*, 2012 WL 1439052, at *4.

### iv.  Source Of Funds

Plaintiffs devote a number of paragraphs of their First Amended Complaint to the source of PHEAA's funds.  (FAC, ¶¶ 32–33, 38, 45.)  The Third Circuit has at times examined the source of an entity's funds in analyzing the Treasury factor. *See, e.g., Cooper*, 548 F.3d at 302–03; *Christy*, 54 F.3d at 1145.  However, the

17

Court has emphasized that this consideration is not as important as it has been in the past.  *See Cooper*, 548 F.3d at 302 ("Although relevant, the percentage of Commonwealth funding is no longer predominant.  Since *Doe*,[5] we have recognized that 'the crux of the state-treasury criterion [is] whether the state treasury is legally responsible for the payment of a judgment against the [entity].'").

Even this diminished consideration is of no moment here because it is only arguably relevant to the question of whether the Commonwealth's money would be used to satisfy a judgment.  *Cooper*, 548 F.3d at 303 (discussing which funds of entity were under Commonwealth's control); *Christy*, 54 F.3d at 1145 (addressing whether source of entity's funds is subject to state control).  Although PHEAA funds its operations with revenues from its activities, the Commonwealth's funds would be used to pay a judgment, because, as this Court has found already, PHEAA's earnings are owned by the Commonwealth and under Commonwealth control.  (Doc. 52 at 10); *Oberg*, slip op. at 9; *Linko*, 2012 WL 1439052, at *4.

### v.  Balancing Of The Sub-Factors

Courts weigh each of these sub-factors in determining whether a *Fitchik* factor is satisfied.  *See, e.g., Cooper*, 548 F.3d at 306; *Christy*, 54 F.3d at 1147–48.

---

5    *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997).

On balance, the first *Fitchik* factor (including whether a payment comes from the State Treasury) militates strongly in favor of a finding that PHEAA is an arm of the Commonwealth and immune from private suit under the Eleventh Amendment.

### b.  The Status of PHEAA Under State Law Is That Of A Commonwealth Agency.

The second *Fitchik* factor – the status of the agency under state law – removes any doubt that PHEAA is an agency of the Commonwealth and therefore immune.  Under this factor, courts must determine whether the state treats the entity as an independent entity or as a surrogate or arm of the State.  *Christy*, 54 F.3d at 1148.  To do so, they consider provisions of state law that define an agency's character.  *Cooper*, 548 F.3d at 308.

This factor includes a consideration of four sub-factors:  (1) how state law treats the agency generally; (2) whether the agency is separately incorporated; (3) whether the agency can sue and be sued in its own right; and (4) whether the agency is immune from state taxation.  *Cooper*, 548 F.3d at 306; *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 230 (3d Cir. 2006); *Fitchik*, 873 F.2d at 659.

### i.  How State Law Treats The Agency Generally

With regard to the first sub-factor, the Commonwealth of Pennsylvania treats PHEAA as its surrogate and an arm of the Commonwealth.  First, Pennsylvania's legislature, through its statutes, regulations, and constitutional

provisions, treats PHEAA as an agency of the Commonwealth.  This Court has

held:  "It is clear from a review of PHEAA's governing statutes that the General

Assembly intended that PHEAA be a Commonwealth agency."  (*See* Doc. 52 at 9.)

Again, the Court's finding – based on judicially noticeable facts – is the law of the

case.

PHEAA was created as an agency of the Commonwealth by the

Pennsylvania General Assembly on August 7, 1963.  *See* 24 P.S. §§ 5101–5112.

The General Assembly entrusted PHEAA with performing a vital function of state

government.  *See* 24 P.S. § 5102 (stating that the purpose of PHEAA is "to

improve the higher educational opportunities of persons who are residents of this

State").  This purpose is recognized as a function of Commonwealth government.

*See Skehan*, 815 F.2d at 248 (education is a function of state government).

Lest there be any doubt that PHEAA is treated as a state agency, PHEAA's

enabling statute further provides that the "creation of the agency is in all respects

for the benefit of the people of the Commonwealth, for the improvement of their

health and welfare, and for the promotion of the economy, and that such purposes

are public purposes and the agency will be performing an essential governmental

function . . . ."  24 P.S. § 5105.6.

20

The Commonwealth also treats PHEAA as a Commonwealth agency by maintaining ownership of – and control over – PHEAA-generated funds, through the power of the legislature, Governor, treasurer, and auditor general.  In addition, the Commonwealth treats PHEAA as it does other Commonwealth agencies in other important ways as well.  The Commonwealth's Attorney General must review and approve all deeds, leases and contracts to be executed by PHEAA, 71 P.S. § 732-204(f), and Pennsylvania's Auditor General has the authority to audit PHEAA's activities, 24 P.S. §§ 5104(1.1), 5108.  PHEAA must also be represented in legal proceedings by the Attorney General absent authorization to use other counsel.  71 P.S. § 732-204(c).  Moreover, the Commonwealth legislature has put a ceiling on the amount of debt that PHEAA may incur.  24 P.S. § 5105.1(a.1).  To further facilitate the Commonwealth's supervision of PHEAA, PHEAA must make an annual report of its year-end condition to the Governor and the legislature. 24 P.S. § 5108.

Pennsylvania's legislature treats PHEAA as a Commonwealth agency in other important ways as well.  Like a typical Commonwealth agency, all of PHEAA's powers are established by the Commonwealth, and its duties are

imposed by the Commonwealth.[6]  Similarly, PHEAA (like a typical

Commonwealth agency) is statutorily authorized to request and receive legal

advice from the Attorney General regarding matters relating to its official duties,

and must follow that advice unless it is overruled by the Commonwealth Court.  71

P.S. § 732-204(a).

The Commonwealth does not require PHEAA (like other Commonwealth

agencies) to comply with state statutes of limitations.  24 P.S. § 5104.3(j);

*PHEAA v. Xed*, 456 A.2d 725, 726 (Pa. Commw. Ct. 1983).  *See also PHEAA v.*

*Reid*, 15 Pa. D.&C.3d 661, 665–66 (Pa. Com. Pl. 1980).

Just like Commonwealth officers and employees, PHEAA's officers and

management employees are public officials subject to the Pennsylvania Public

Official and Employee Ethics Act, 65 Pa. C.S.A. § 1102.  Its employees are treated

as Commonwealth employees for participation in the Commonwealth retirement

---

[6]   *See, e.g.,* 24 P.S. § 5104 (establishing the powers of PHEAA's board of
directors); § 5104.1 (giving PHEAA the power to deny financial assistance to
any student under certain defined circumstances); § 5104.3 (authorizing and
directing PHEAA to maintain a record of administrative and legal actions and
proceedings which it undertakes in regard to the collection of student loans, and
authorizing PHEAA to initiate action against borrowers whom it deems to be
indebted to it by filing a statement of claim in the records maintained by the
agency); § 5105.1 (authorizing PHEAA's board of directors, with the approval
of the Governor, to authorize issuance of negotiable bonds, notes and other
evidences of indebtedness); § 5151 (establishing a broad-scale state scholarship
program).

system.  *Beardsley v. State Emps.' Ret. Bd.*, 691 A.2d 1016 (Pa. Commw. Ct.

1997); *PHEAA v. State Emps.' Ret. Bd.*, 617 A.2d 93, 94 (Pa. Commw. Ct. 1992),

*aff'd*, 636 A.2d 629 (Pa. 1994).

Similarly, Pennsylvania's judicial branch treats PHEAA as a

Commonwealth agency and not an independent agency.  Pennsylvania's

Commonwealth Court, a special court with original jurisdiction over cases in

which Pennsylvania or its officers are a party, *see* 42 Pa. C.S.A. § 761 and Pa. R.

App. P. 106, has concluded that PHEAA is an agency of the Commonwealth for

purposes of the court's original jurisdiction and the Commonwealth's sovereign

immunity.  *Richmond v. PHEAA*, 297 A.2d 544, 546–47 (Pa. Commw. Ct. 1972).

Several other Pennsylvania courts have likewise held that PHEAA is a

Commonwealth agency.  *See, e.g., PHEAA v. Barksdale*, 449 A.2d 688, 689 (Pa.

Super. Ct. 1982) ("[PHEAA] is undeniably an agency of the Commonwealth.");

*Reid*, 15 Pa. D.&C.3d at 665–66 ("[T]he conclusion is inescapable that PHEAA is

an agency of the Commonwealth."); *Pa. Dep't of Revenue v. Bookser*, 3 Pa.

D.&C.4th 566, 568–69 (Pa. Com. Pl. 1989) ("[PHEAA] is an agency of the

Commonwealth . . . .").

Federal courts have likewise acknowledged that PHEAA is an agency of the

Commonwealth.  *See, e.g., Linko*, 2012 WL 1439052, at *4 (finding that debt owed

to PHEAA was "owed to the Commonwealth"); *PTC Career Inst., Inc. v. Evans*, No. 94-1290, 1994 WL 243845, at *1 n.1 (E.D. Pa. June 6, 1994); *In re Pettis*, 146 B.R. 653, 654 n.2 (E.D. Pa. 1992) (dismissing PHEAA on Eleventh Amendment immunity grounds).

### ii.  <u>Whether The Agency Is Separately Incorporated</u>

With regard to the second sub-factor, although PHEAA is separately incorporated, it was incorporated by the Commonwealth as a "body corporate and politic constituting a public corporation and government instrumentality which shall be known as the 'Pennsylvania Higher Education Assistance Agency.'" 24 P.S. § 5101.  As an agency of the Commonwealth, PHEAA's use of funds is restricted to carrying out the "purposes of the agency."  24 P.S. § 5104(3).  *See also* 24 P.S. § 5102 (stating that the purpose of PHEAA is "to improve the higher educational opportunities of persons who are residents of this State").

The Third Circuit has relegated this sub-factor to diminished consideration and minimized its importance.  In *Skehan*, the court found it insignificant that the entity at issue, the State System of Higher Education, had a separate existence as a corporation: "Although the State System does have a separate existence as a corporation, this factor alone, as demonstrated by the statutory language, does not disassociate it from the exercise of governmental functions and governmental

24

objectives." *Skehan*, 815 F.2d at 247–48 (finding a "body corporate . . . and government instrumentality" to be an arm of the Commonwealth).

Thus, Plaintiffs' allegation that PHEAA is a "body corporate and politic constituting a public corporation" (FAC, ¶ 46) is of negligible import to the Court's "arm of the state" analysis.  The mere fact that PHEAA, like the State System, has a separate existence, standing alone, cannot withstand the overwhelming effect of the statutory provisions and judicial decisions showing the Commonwealth treats PHEAA as its surrogate and empowers it to perform essential "governmental functions and governmental objectives" on behalf of the Commonwealth.  *Id.*

### iii.  Whether The Agency Can Sue And Be Sued In Its Own Right

With regard to the third sub-factor, although PHEAA can sue and be sued in its own right, the Court previously rejected the importance of this consideration when it held that PHEAA's assets are the assets of the Commonwealth.  "[A] judgment against PHEAA 'would, in essence, injure the state.'  Although PHEAA is somewhat insulated from the Treasury by 24 P.S. § 5104(8), which provides that 'no debt of the agency shall be a debt of the Commonwealth,' ultimately PHEAA's assets are assets of the Commonwealth."  (Doc. 52 at 10).  *See also Linko*, 2012

WL 1439052, at *4 (finding that debt owed to PHEAA was "owed to the Commonwealth").

The Court's holding is the law of the case, and Plaintiffs' conclusory "allegations" that PHEAA "sues and is sued in its own name" (*see* FAC, ¶ 35) and "no obligation of PHEAA shall be a debt of the Commonwealth" (*see* FAC, ¶ 30) present no reasons to revisit this holding.  In addition to controlling and owning all of PHEAA's earnings, which would be used to pay any judgment resulting from litigation, the Commonwealth exercises substantial control over PHEAA's initiation and defense of litigation, just as it would with any agency of the Commonwealth.  For example, PHEAA is statutorily authorized to request and receive legal advice from the Attorney General regarding matters relating to its official duties, and must follow that advice unless it is overruled by the Commonwealth Court.  71 P.S. § 732-204(a).  Moreover, it must be represented in legal proceedings by the Attorney General unless other counsel are authorized.  71 P.S. § 732-204(c).

### iv.  <u>Whether The Agency Is Immune From State Taxation</u>

As a Commonwealth agency, PHEAA enjoys a variety of tax exemptions. "The property, income, and activities of [PHEAA] shall be exempt from all taxes . . . ."  24 P.S. § 5107.  The income from PHEAA-issued bonds, notes or other obligations are free from tax.  24 P.S. § 5105.6.  This also suggests PHEAA

is an arm of the Commonwealth.  *See Heppler*, 2011 WL 2881221, at *7 ("Because

the PLCB does not pay a separate tax on its revenue to the Commonwealth or taxes

on its property or bonds, this suggests that Pennsylvania state law considers the

PLCB an arm of the state.").

### v.  <u>Balancing Of The Sub-Factors</u>

Courts weigh each of these sub-factors in determining whether the factor is

satisfied.  *See, e.g., Cooper*, 548 F.3d at 308; *Christy*, 54 F.3d at 1148.  On

balance, the second *Fitchik* factor (including the treatment of the agency by the

state) compels a finding that PHEAA is an arm of the Commonwealth and immune

from private suit under the Eleventh Amendment.

### c.  <u>Pennsylvania Exercises Absolute Control Over PHEAA</u>.

Finally, the third *Fitchik* factor – the degree of autonomy exercised by the

entity – similarly confirms that PHEAA is an arm of the Commonwealth and

therefore immune.  The Commonwealth exercises absolute control over PHEAA.

PHEAA's directors and officers are appointed by the Commonwealth, and the

Commonwealth retains a veto over PHEAA's material actions.

Because PHEAA was created as an agency of the Commonwealth by the

General Assembly, *see* 24 P.S. § 5101, all of its powers and duties are established

by state statute and controlled by the Commonwealth.  *See* n.6, *supra*.  PHEAA

exists at the pleasure of the Commonwealth, as the legislature can change

27

PHEAA's powers and duties at any time or even dissolve PHEAA.  *See Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1290 (10th Cir. 1971) ("It is true that today the state has created the board of regents into a body corporate, but tomorrow it may set aside this body corporate and place the control of the properties in any other board or organization.") (concluding university was an "arm of the state").

Until recently, PHEAA was governed by a 20-person board of directors, every member of which was either a current elected Commonwealth official or an appointee of the Governor of Pennsylvania.  24 P.S. § 5103 (repealed 2010). Sixteen of the 20 members of the board were members of the sitting Pennsylvania General Assembly.  The remaining board members were the Secretary of Education and three gubernatorial appointees.  24 P.S. § 5103.

On July 9, 2010, section 5103 was repealed, revised, and recodified at 71 P.S. § 111.2.  Under the revised statute, four of the sixteen legislative seats on the Board may be filled by persons who are not legislators, but who have experience in a field related to finance, banking, investment, information technology, higher education or higher education finance.  Contrary to Plaintiffs' erroneous allegation (*see* FAC, ¶ 34), however, the 2010 amendment did not alter the Commonwealth's control of PHEAA's board.  Under the revised statute, the Commonwealth retains control over PHEAA and its board because the legislature appoints the four non-

legislator members, and the remaining members are sitting legislators and the Secretary of Education, who is appointed by the Governor and confirmed by the Senate.

The Commonwealth also exercises control over PHEAA because it can remove members of PHEAA's Board of Directors.  Pennsylvania law provides that any appointment by the President *Pro Tempore* of the Senate, the Speaker of the House of Representatives, or the Governor can be rescinded by those Commonwealth officials.  Pa. Const. art. VI, § 7 ("Appointed civil officers . . . may be removed at the pleasure of the power by which they shall have been appointed.").  Also, those Board members who are sitting legislators are removed when they are no longer members of the particular body of the General Assembly from which they were appointed.  24 P.S. § 5103; 71 P.S. § 111.2(a)(3).  Finally, the Governor can remove the Secretary of Education.  Pa. Const. art. IV, § 8(a); Pa. Const. art. VI, § 7; 71 P.S. § 111.2.

State authority over the appointment of board members supports a finding that PHEAA is an arm of the Commonwealth.  *See Christy*, 54 F.3d at 1149 ("State authority over the appointment of [Turnpike] Commission members lends obvious support to a finding of sovereignty"); *Heppler*, 2011 WL 2881221 at *7 ("In *Christy*, the Third Circuit held that when the Commonwealth has the power to

appoint all the members of an agency, the balance weighs slightly in favor of granting immunity from suit.").

The Commonwealth's control of PHEAA through its Board is analogous to the Commonwealth's control over the Turnpike Commission in *Christy*, the State System of Higher Education in *Skehan*, the Liquor Control Board in *Heppler*, and the State Employees' Retirement System in *Larsen,* all of which were found to satisfy this prong of the analysis. *See Christy*, 54 F.3d at 1149; *Skehan*, 815 F.2d at 248; *Larsen*, 553 F. Supp. 2d at 411 & n.4; *Heppler*, 2011 WL 2881221, at *7; *cf. Cooper*, 548 F.3d at 308–09.

Plaintiffs' contradictory and clearly erroneous allegation that PHEAA is not under the "direct control" of any state official (FAC, ¶ 34) is simply incorrect and contrary to law. Every member of PHEAA's board of directors is a current elected Commonwealth official or appointed by the Governor. 71 P.S. § 111.2. *See also* 24 P.S. § 5103. The Court need not accept as true an allegation that is contrary to law. *Baylor*, 2008 WL 4224803, at *2.

To further enable the Commonwealth's supervision and control, PHEAA must report annually on its activities and year-end condition to the Governor and the legislature. 24 P.S. § 5108. The State Employees' Retirement System, which

30

the Court found immune in *Larsen*, made annual reports to the General Assembly.

71 Pa. C.S.A. § 5931(e); *Larsen*, 553 F. Supp. 2d at 411.

The pervasiveness of the Commonwealth's authority over PHEAA is illustrated by the material controls or "veto powers" the Commonwealth imposes on PHEAA's earnings, contracts, legal proceedings, and accounting records, as discussed above:

- All of PHEAA's earnings be deposited into the State Treasury and must stay in the Treasury until the State Treasurer gives PHEAA permission to spend them.  24 P.S. § 5104(3); (FAC, ¶ 31); 72 P.S. §§ 306, 307, 1501, 1502; Pa. Const. art. III, § 24;

- The Attorney General must review and approve all deeds, leases and contracts to be executed by PHEAA.  71 P.S. § 732-204(f);

- PHEAA must be represented in legal proceedings by the Attorney General absent authorization to use other counsel.  71 P.S. § 732-204(c);

- The Commonwealth's Auditor General has the authority to audit PHEAA's activities.  24 P.S. §§ 5104(1.1), 5108;

- PHEAA must make an annual report of its year-end condition to the Governor and the legislature.  24 P.S. § 5108;

- PHEAA must obtain the Governor's approval before borrowing any money.  24 P.S. §§ 5104(3), 5105.1(a); and

- The Commonwealth legislature has put a ceiling on the amount of debt that PHEAA may incur.  24 P.S. § 5105.1(a.1).

By focusing solely on PHEAA's authority to enter into contracts, sue and be sued, borrow money and issue debt (*see* FAC, ¶ 35), Plaintiffs ignore the material

limitations Pennsylvania imposes on PHEAA's exercise of that authority, as detailed above.  The power to enter into contracts is negligible both because such contracts must be approved by the Commonwealth's Attorney General, 71 P.S. § 732-204(f), and because any earnings from such contracts go directly to the Commonwealth.  As the Court concluded previously, "ultimately PHEAA's assets are assets of the Commonwealth. . . ."  (Doc. 52 at 10.)  *See also Linko*, 2012 WL 1439052, at *4 (finding debt owed to PHEAA was "owed to the Commonwealth").

### d.  Totality Of Factors

To determine whether PHEAA is an arm of the Commonwealth and therefore immune under the Eleventh Amendment, the Court should consider the totality of the three *Fitchik* factors.  *See Christy*, 54 F.3d at 1150 ("Having considered each of the three factors above, we now must consider the three factors in their totality.").  As noted, no single factor is dispositive, and all factors are to be weighed equally.  *Benn*, 426 F.3d at 239–40; *Cooper*, 548 F.3d at 302 ("State dignity encompasses all three factors – we give them equal consideration, and how heavily each factor ultimately weighs in our analysis depends on the facts of the given case.").

Here, the totality of the three *Fitchik* factors weighs heavily in favor of a finding that PHEAA is an arm of the Commonwealth of Pennsylvania and therefore immune from private suit.[7]

## IV.  CONCLUSION

PHEAA is an arm of the Commonwealth of Pennsylvania that is immune from private suit pursuant to the Eleventh Amendment of the U.S. Constitution. As a result, PHEAA respectfully moves the Court to enter an Order dismissing the First Amended Complaint with prejudice as to PHEAA, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**[BALANCE OF PAGE LEFT INTENTIONALLY BLANK]**

---

[7]   The United States District Court for the Eastern District of Virginia recently concluded that PHEAA was an arm of the Commonwealth of Pennsylvania. *Oberg*, No. 01:07-cv-960, slip op. at 21 (applying Fourth Circuit's arm-of-the-state test).

33

Dated:  June 6, 2013                    **STEVENS & LEE, P.C.**

                                        By: *s/ Kenneth D. Kleinman*
                                             Daniel B. Huyett (PA 21385)
                                             Kenneth D. Kleinman (PA 31770)
                                             Jo Bennett (PA 78333)
                                             Neil C. Schur (PA 79068)
                                             1818 Market Street, 29th Floor
                                             Philadelphia, PA 19103
                                             Phone: 215-751-2883
                                             Fax: 610-988-0869
                                             dbh@stevenslee.com
                                             kdk@stevenslee.com

                                        Attorneys for Defendant Pennsylvania
                                        Higher Education Assistance Agency

<u>**CERTIFICATE OF WORD COUNT PURSUANT TO LOCAL RULE 7.8(b)**</u>

Pursuant to Rule 7.8(b)(2) of the Local Rules of Civil Procedure, the undersigned hereby certifies that, utilizing the word Count feature of the word-processing software used, the foregoing Memorandum of Law contains 7,348 words and does not exceed 7,500 words in compliance with the Court's June 3, 2013 Order permitting Defendant to file a Memorandum of Law in Support of its Motion of up to 7,500 words.

Dated:  June 6, 2013         **STEVENS & LEE**

By: *s/ Kenneth D. Kleinman*
    Daniel B. Huyett (PA 21385)
    Kenneth D. Kleinman (PA 31770)
    Jo Bennett (PA 78333)
    Neil C. Schur (PA 79068)
    1818 Market Street, 29th Floor
    Philadelphia, PA 19103
    Phone: 215-751-2883
    Fax: 610-988-0869
    dbh@stevenslee.com
    kdk@stevenslee.com
    jb@stevenslee.com
    ncsc@stevenslee.com

    Attorneys for Defendant Pennsylvania
    Higher Education Assistance Agency

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of June, 2013, I electronically filed

Defendant Pennsylvania Higher Education Assistance Agency's Memorandum of

Law in Support of Its Motion to Dismiss Plaintiffs' First Amended Complaint with

the Clerk of the Court using CM/ECF.  I also certify that the foregoing

Memorandum of Law is being served this day on counsel for Plaintiffs via ECF.


By: *s/ Kenneth D. Kleinman*
Kenneth D. Kleinman (PA 31770)