# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

_____
                         )

Anthony Lang, Sr. and Ahkeem     )
Brown, individually and on behalf  )
of all others similarly situated,     ) CIVIL ACTION NO.: 1:12-CV-1247-JEJ
        Plaintiffs             )

                         )
        v.                  )
                         )
Pennsylvania Higher Education    ) Judge Jones
Assistance Agency, et al.,         )
        Defendants        ) *ELECTRONICALLY FILED*
_____)

## PLAINTIFFS' UNOPPOSED MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT AND ATTORNEY FEES WITH MEMORANDUM IN SUPPORT

Named Plaintiffs, Anthony Lang, Sr. and Ahkeem Brown ("Plaintiffs"), respectfully move for approval of the Settlement reached in this Fair Labor Standards Act ("FLSA") collective action on behalf of all Call Center employees who were employed by Pennsylvania Higher Education Assistance Agency ("PHEAA") in the FedLoan Servicing Customer Service and the FedLoan Servicing Collections Call Centers (hereinafter "FLS Call Centers") in Pennsylvania (Cost Centers Nos. 5310 and 5320) between September 1, 2009 and August 31, 2012 (hereinafter "Collective Members").  Defendant PHEAA and individual Defendants James L. Preston, Stephanie Foltz, Todd Mosko and Matthew Sessa concur in this Motion.  To effectuate a binding release, FLSA

settlements generally require judicial approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (FLSA rights may be released by stipulated judgment). A copy of the Parties' Settlement Agreement and Release ("Settlement Agreement"), which has been signed by all parties and approved as to form and legality by the Commonwealth of Pennsylvania Office of Attorney General and PHEAA's Chief Legal and Compliance Officer, is attached hereto as Exhibit 1. Plaintiffs respectfully request that this Honorable Court enter an Order granting this motion and approving the Parties' Settlement.

## MEMORANDUM IN SUPPORT

Plaintiffs and Defendants have reached a settlement of this FLSA collective action that provides participating class members monetary relief that approximates 100% of their alleged unpaid overtime hours, based upon ten (10) minutes of overtime per day, between September 1, 2009 and August 31, 2012, for which they were not paid, after payment of attorneys' fees and related expenses.  This outcome is a fair and efficient resolution following five years of highly contested litigation, achieved by experienced counsel for both sides.   The Settlement should be approved.

Settlement was reached after the Parties' investigation of the facts, production by Defendants of case-critical payroll and time records, written and

verbal correspondence with Plaintiffs and other potential class members by Plaintiffs' counsel, and a Court-sponsored mediation in the Third Circuit Court of Appeals to bring about a resolution.  In order to settle this matter, Defendants have agreed to pay a "Gross Settlement Amount" (or "GSA") of $1,350,000.00, inclusive of attorneys' fees and costs, to resolve all claims of the Collective Members for unpaid wages, related to unpaid overtime hours, that were alleged in the Lawsuit.  The GSA shall be allocated as follows: (1) $714,000.00 shall be allocated to pay the claims of the Collective Members (the "Net Settlement Fund") and the Settlement Claims Administrator's fees and costs, and (2) $636,000.00, or such other amount approved by the Court, shall be allocated to pay the attorneys' fees and costs and Named Plaintiffs' service awards.

Based on the time and payroll data exchanged by the parties, and their independent investigation of the relevant facts, Plaintiffs' counsel believes the $714,000.00 Net Settlement Fund approximates 100% of the value of the putative Collective Members' total claims for unpaid overtime hours worked during the applicable time period, based upon ten (10) minutes of overtime per eligible day, free and clear of attorneys' fees and costs and Named Plaintiffs' service awards.

## Facts and Procedural History

Anthony Lang, Sr. instituted an action against PHEAA in the United States District Court for the Middle District of Pennsylvania on June 26, 2012, captioned

*Anthony Lang, Sr. et al. v. PHEAA*, No. 12-cv-1247, alleging violations of the FLSA, the Pennsylvania Wage Payment and Collection Law and the Pennsylvania Minimum Wage Act, in connection with preparatory activities by PHEAA FedLoan Servicing call center employees.  By Order of January 18, 2013, this Honorable Court dismissed the two counts arising under Pennsylvania law. Named Plaintiffs filed an Amended Complaint on May 6, 2013 against PHEAA and four of its executive employees, James L. Preston, Stephanie Foltz, Todd Mosko and Matthew Sessa, alleging violations of the FLSA.

Following extensive litigation, which involved an appeal and remand from the Third Circuit Court of Appeals regarding the issues of 11th Amendment Immunity and Qualified Immunity, the Parties filed motions for Summary Judgment in February 2016.  On August 23, 2016, this Honorable Court granted Plaintiffs' Motion for Partial Summary Judgment regarding issue preclusion as to PHEAA's affirmative defense of 11th Amendment Immunity.  Defendants appealed the Order of August 23, 2016 to the Third Circuit Court of Appeals.

On February 15, 2017, the Parties participated in a mediation sponsored by the Third Circuit Court of Appeals.  The attorneys who participated in the mediation are experienced wage-and-hour litigators and vigorously represented their clients' respective interests.

During the course of this litigation, the Parties embarked on an investigation and exchange of information to ensure an informed and constructive discussion. The Parties exchanged critical class, payroll, and compensation data, and Plaintiffs' counsel consulted with the Named Plaintiffs.  During the mediation, the Parties evaluated the payroll data, as well as defenses which Defendants intended to raise to Plaintiffs' claims.  Negotiations were robust as both sides zealously advocated their interests.  As a result of discussions with each other and with the mediator, the Parties were able to reach a mutually acceptable settlement.

### Settlement Terms

The Parties have executed a Settlement Agreement that allows eligible members to participate in a settlement of the wage-and-hour claims asserted in this action.  The Class is defined as:  "all Call Center employees who were employed by PHEAA in the FedLoan Servicing Customer Service and the FedLoan Servicing Collections Call Centers in Pennsylvania (Cost Centers Nos. 5310 and 5320) between September 1, 2009 and August 31, 2012."  To the best of the knowledge and belief of Plaintiffs and Defendants, there are a maximum of 1,113 people in the Class.

The Settlement Agreement and Release of Claims provides for a GSA of $1,350,000.00, inclusive of attorneys' fees and costs, to resolve all claims of the Collective Members for unpaid wages alleged in the lawsuit.  The GSA will be

allocated as follows: (1) $714,000.00 shall be allocated to pay the claims of the Collective Members (the "Net Settlement Fund") and the Settlement Claims Administrator's fees and costs, and (2) $636,000.00, or such other amount approved by the Court, shall be allocated to pay the attorneys' fees and costs and Named Plaintiffs' service awards.

Pursuant to the terms of the Settlement Agreement, Counsel shall select a Settlement Claims Administrator to be responsible for administering the tasks enumerated in the Settlement Agreement.

The amount of settlement distributions to the members of the Collective Members who opt in to the class shall be determined by formula.  A Collective Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following:

(1) compute the total number of workweeks for each Collective Member employed in the FLS Call Centers during the Relevant Statutory Period;

(2) divide the total number of workweeks worked by each Collective Member in the FLS Call Centers during the Relevant Statutory Period by the total number of workweeks worked by all Collective Members in the FLS Call Centers during the Relevant Statutory Period;

(3) multiply the fractional amount derived in (2) by the amount of the Net Settlement Fund to compute the Collective Member's share of the Net Settlement Fund.

The Settlement Claims Administrator shall allocate 50% of the total paid to Participating Collective Members to W-2 wage payments subject to withholdings, and 50% to 1099 non-wage payments for interest and liquidated damages. Payments that are issued from the Net Settlement Fund shall reflect all applicable withholdings and previously authorized deductions.

Plaintiffs' counsel engaged in numerous discussions with Plaintiffs and counsel for Defendants to determine the scope of Plaintiffs' claims and the defenses which would be asserted.  Based upon these discussions, Plaintiffs' counsel determined that questions existed with respect to whether some or all of the claimed overtime hours were actually compensable.  Furthermore, arguments were raised by Defendants that Defendants acted in good faith and would potentially be able to defend against an assessment of liquidated damages as well as limiting the class period to two years prior to the filing of the action.  As a result of these discussions, the Net Settlement Fund provides full compensation to participating Collective Members, exclusive of attorneys' fees and costs, for approximately ten (10) minutes of overtime pay for each eligible work day over the three-year class period.

Importantly, no putative Collective Members must participate, nor must any putative Collective Members submit anything to opt out of the Settlement in order to preserve any claim.   Instead, only putative Collective Members who affirmatively participate will release their alleged claims.  Any unclaimed portion of the Net Settlement Fund will revert back to Defendants.

The Release provision is narrowly tailored to the wage claims asserted in the case, and applies only to those Collective Members who choose to accept the Settlement benefit.  The Release of Claims by Collective Members who choose to opt in to the settlement is defined in the Settlement Agreement, *in toto*, as follows:

> All Participating Collective Members executing and returning a Claim Form shall release the PHEAA Defendants and any of its current or former owners, parents, subsidiaries, divisions, affiliated entities, members, shareholders, officers, directors,   agents, principals, trustees, administrators, executors, attorneys, employees, insurers, reinsurers, predecessors, successors and assigns, both individually and in their official capacities (collectively "Releasees") from any and all overtime claims under the Fair Labor Standards Act and applicable state law during their employment in the FLS Call Centers, they may have had at any time through August 31, 2012, including claims for unpaid overtime wages, interest on such claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Only the Named Plaintiffs, Anthony Lang, Sr. and Ahkeem Brown, are granting a general release of claims, which is granted in exchange for a Service Award, if approved.

The proposed notice to the putative Collective Members (Exhibit 2 attached hereto) fully and clearly informs them of the material terms of the Settlement, their rights to participate or not, the possible limitations on their rights should they not participate, the precise scope of the release, and the procedure to implement whatever decision each individual makes regarding the Settlement.

In addition to compensating Collective Members for their alleged unpaid overtime wages, the Settlement provides for a modest $15,000.00 service award to Plaintiff Anthony Lang, Sr., who was instrumental in pursuing this case, and diligently worked with Plaintiffs' counsel to investigate the case and further the litigation, all for the benefit of those employees who will recover under this Settlement.  An additional award of $5,000.00 is provided for Plaintiff Ahkeem Brown, who also provided important support to Plaintiff's counsel and the class in the furtherance of the litigation.

Procedurally, the parties agree that within five (5) business days of the Court's Order approving the settlement, Defendants will provide the Settlement Claims Administrator with a list, in electronic form, of all Collective Members containing the following information: name, last known address, last known phone number(s), last known email address(es), social security number, and dates of employment at the FLS Call Centers within the Relevant Statutory Period. PHEAA will provide Plaintiffs' counsel with the aforementioned list, but without

social security numbers.  Within twenty (20) days following entry of the Court's

Approval Order, the Settlement Claims Administrator shall send each Collective

Member a Notice Packet via e-mail (if known) and First Class U.S. Mail.  The

Notice Packets sent via US Mail shall include an enclosed, postage-paid return

envelope.  The Notice Packet shall advise each Collective Member of the

approximate amount of his or her gross settlement award.  Pursuant to the specific

terms of the Settlement Agreement, and taking into account situations where

Notices may need to be mailed to updated addresses, Collective Members will be

given adequate time to request information, dispute the amount represented as their

settlement amount, and return the Notice Forms to opt-into the settlement.

## Argument

## I.     The Standard and the One-Step Procedure for FLSA Opt-In Settlement Approval

Because the Settlement has no binding effect on absent class members

unless they affirmatively accept the benefits of the Settlement, it is governed by

FLSA procedures rather than Rule 23, which is binding on absent class members

unless they affirmatively opt *out* of the class.  *Compare, e.g., Cooper v. Fed.*

*Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("a judgment in a properly

entertained class action is binding on class members in any subsequent action")

*and Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining purpose

of Rule 23 notice is to advise class members they will be *bound* by judgment

unless they request exclusion) *with Greenwald v. Phillips Home Furnishings Inc.*, 2009 WL 259744 at *4 (E.D. Mo., Feb. 3, 2009) ("A collective action under [the FLSA, 29 U.S.C.] § 216(b) differs from class actions brought under Rule 23 . . . . A primary distinction is that under FLSA a similarly situated employee must 'opt in' to the collective action to be bound by it.").

In scrutinizing a settlement, "the primary focus of the court's inquiry in determining whether to approve the settlement of an FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (internal citations omitted). Accordingly, courts grant final approval to FLSA opt-in settlements in a single step, rather than the Rule 23 procedure that utilizes preliminary approval, notice to the class members who will be bound unless they opt out, and final approval after an "opt out" period. *E.g., Hill v. World Wide Tech. Holding Co., Inc.*, 4:11CV02108 AGF, 2012 WL 5285927 (E.D. Mo. Oct. 25, 2012) (granting final approval of FLSA settlement as to both the named plaintiff and all eligible FLSA collective class members who elect to opt-in to the settlement).

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a

stipulated judgment after scrutinizing the settlement for fairness." *Simmons v. Enterprise Holdings, Inc.*, 2012 WL 2885919 at *1 (E.D. Mo. July 13, 2012) (citing *Lynn's Food Stores,* 679 F.2d at 1353).  "Accordingly, as long as the Court is satisfied that a settlement reached in adversarial proceedings represents a fair and equitable compromise of a bona fide wage and hour dispute, the settlement may be approved." *Id.*  Court review of an FLSA settlement is two-pronged.  First, the Court must be satisfied that the settlement was the product of "contested litigation."  Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties.  *Lynn's Food Stores,* 679 F.2d at 1353-1354.  Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354.  If the proposed settlement reflects a reasonable compromise of contested issues, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation.  *Id.*

"While the Third Circuit has not directly addressed the factors to be considered in deciding motions for approval of FLSA settlements, district courts have typically looked to the considerations set forth in *Lynn's Food*."  *Brumley v. Camin Cargo Control, Inc.*, CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012).  This Court should readily conclude the Parties' Settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

## II.     The Putative Opt-In Collective Members are Similarly Situated

As a threshold matter, the Court may readily conclude that the employees eligible to participate in the settlement are "similarly situated" within the requirements of 29 U.S.C. § 216(b) of the FLSA, which is the standard for maintenance of an FLSA collective action.  As defined by the class, included are all Call Center employees who were employed by PHEAA in the FLS Call Centers in Pennsylvania (Cost Centers Nos. 5310 and 5320) between September 1, 2009 and August 31, 2012.  Because of these key similarities, including job function, location and time frame, the Court may readily conclude the employees are "similarly situated" for purposes of effectuating this Settlement.

## III.    The Proposed Settlement Is the Product of Contested Litigation

The proposed Settlement is the product of contested litigation, and this conclusion is not altered by the Parties' ability to compromise this case for the purpose of settlement.  In their Amended Complaint, Plaintiffs presented detailed allegations regarding Defendants' policies and practices of requiring employees to work overtime hours without compensation.  In their Answer, Defendants denied Plaintiffs' material factual allegations and asserted numerous defenses that they argued would defeat Plaintiffs' and putative Collective Members' claims in whole or in part.  Through exchange of time and payroll data and other relevant job-related information, the Parties extensively investigated Plaintiffs' claims.  In

addition to their factual investigation, the Parties also analyzed the various legal issues implicated in this case, including the standards for assessing and defending claims for liquidated damages under the FLSA.  The settlement of this lawsuit was achieved only after the exchange of key information on disputed fact issues and the vetting of the Parties' positions through arms-length negotiation in the mediation.

## IV.    The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The second prong of the Court's settlement approval inquiry focuses on two issues.  The first issue is confirming the existence of a *bona fide* dispute between the Parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed Settlement.  Both are easily satisfied.

### A.    A *Bona Fide* Dispute Existed Between the Parties

Plaintiffs allege Defendants violated the FLSA because they required the Collective Members to work overtime hours without compensation.  Defendants deny Plaintiffs' allegations, contend that their policies and practices comply with all applicable laws, and assert numerous affirmative and other defenses, including defenses regarding 11th Amendment immunity and qualified immunity, which are still at issue.

If Plaintiffs' allegations ultimately proved correct, Defendants would be faced with the prospect of a substantial monetary verdict potentially exceeding the amount of the Settlement, including for the possibility of additional statutory

liquidated damages, as well as an obligation to pay the legal fees and costs incurred by Plaintiffs to prosecute the case through trial instead of the comparatively modest fees incurred to obtain a resolution at this juncture.   If Defendants prevailed, then Plaintiffs would obtain no recovery of any kind.   The Parties' positions were staked out in the Parties' pleadings, throughout the course of the litigation and at the mediation, and the Court should readily conclude a *bona fide* dispute between the parties existed.

### B.     The Proposed Settlement Is Fair and Reasonable

This Settlement was the product of arm's-length negotiations by experienced counsel and approximates the value of the putative Collective Members' total claims for ten minutes of unpaid overtime hours per eligible day worked during the applicable three year time period, free and clear of attorney's fees and expenses and Named Plaintiffs' service awards.   The Settlement eliminates the inherent risks both sides would bear if this complex litigation continued to resolution by a jury. As a compromise, and to provide Defendants with the certainty of a ceiling on liability, the GSA is capped at $1,350,000.00.   Plaintiffs' counsel supports this compromise, in view of the disparity of factual testimony anticipated amongst both plaintiff and defense witnesses, uncertainty in the law, and because the time upon which the Net Settlement Fund is based represents approximately ten minutes per day of overtime hours represented by data extracted by Defendants' computer

systems.  *See* Exhibit 3, Declaration of Larry A. Weisberg, Esquire, ¶3.  In sum, these are patently reasonable compromises in light of the risks and costs associated with prosecuting the case to a jury trial.  Under these circumstances, a presumption of fairness should attach to the Settlement.  *See Lynn's Food Stores*, 679 F.2d at 1354 (the adversarial nature of a litigated FLSA case indicates fairness).  Several specific factors confirm the Settlement's fairness and reasonableness:

### 1. Public Policy Favors Settlements

Public policy favors settlements.  This is particularly true in complex cases such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of further protracted litigation.  *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor").  The Parties' settlement is a model of adversarial positions coupled with cooperative exchange of critical information to enable the Parties and their counsel to evaluate the claims and defenses without additional protracted expense and burden on the Court.

### 2. Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

The Parties disagree about the merits of Plaintiffs' and the Collective Members' claims and the viability of Defendants' defenses.  If litigation continues,

Plaintiffs and the putative class would face many obstacles, including (i) the risk that the case would not be certified for a class or collective action; (ii) challenges to proving damages; and (iii) risk of adverse rulings at the trial court and appellate level with respect to both factual issues and issues of immunity; and (iv) the inherent risks of a jury trial.  The proposed Settlement brings immediate monetary value to each of the class members who elect to participate.  Although the recovery at trial potentially could have been greater than sums received under the Settlement Agreement, it is also possible the recovery would have been less, or nothing at all. For instance, Defendants contended that the unpaid time alleged by the Collective Members was not compensable or *de minimis*, and that any failure to pay its employees was in good faith.  If the jury were to agree with Defendants, Plaintiffs would likely recover little or nothing.

Moreover, Plaintiffs would have to obtain collective action certification to present class-wide claims to a jury.  Although Defendants concede the potential class members are similarly situated for settlement purposes, Defendants would have vigorously argued that various differences in job duties and responsibilities preclude collective action certification had litigation continued.  Absent settlement, this issue remained uncertain.

In the face of these material disputes, it is significant that this Settlement brings class members meaningful monetary value now, not years from now, and

provides certainty regarding the outcome.  *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future.").  "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."  *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citing cases).

### 3.     This Was a Complex and Lengthy Case

This case involved complex issues of fact and law which remain unanswered and would have to be resolved at or before trial, some of which are currently pending before the Third Circuit Court of Appeals.  Plaintiffs would need to compile and adduce documentary evidence, representative testimony, and possibly expert testimony sufficient to establish liability and damages for the entire class. Regardless of the outcome at trial, post-judgment appeals would be likely. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed Settlement.

### 4.     The Parties and Their Counsel Support the Settlement

After thorough investigation of the facts and law, the Parties have gained a comprehensive knowledge of their respective claims and defenses.  Additionally, the Parties have ample evidence to make an informed assessment of the proposed

Settlement.  "[T]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties.  Courts have consistently refused to substitute their business judgment for that of counsel."  *Id.* Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the Parties' counsel believe the Settlement is fair, reasonable, and adequate.  The Parties respectfully suggest this Court should conclude the proposed Settlement reflects a fair resolution of a *bona fide* dispute under the FLSA and approve the Settlement.

## V.      The Named Plaintiffs Should Receive a Service Award

The time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award "above and beyond what the typical class member is receiving."  *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006).  Service awards "are particularly appropriate in the employment context [because] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)

Plaintiffs Anthony Lang Sr. and Ahkeem Brown substantially assisted counsel in achieving this Settlement on behalf of the class, and should receive a service award.  Plaintiff Lang was responsible for initiating this action and

provided invaluable guidance and assistance on numerous occasions to Plaintiffs' counsel.  Plaintiff Lang also assisted counsel in evaluating Defendants' proffered defenses.  Plaintiff Brown similarly assisted Plaintiff's counsel in analyzing the facts of the case and evaluating the proffered defenses.  There is no question that the other employees have substantially benefited from the actions of Mr. Lang and Mr. Brown.  Without Mr. Lang and Mr. Brown's efforts, this case would not have been brought and this Settlement would not have been achieved.  In light of these efforts, payment of a $15,000.00 service award to Mr. Lang and a $5,000 service award to Mr. Brown is amply justified.  See *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009), approving a $20,000 service award to each of the three named Plaintiffs, and further citing, "*Garett v. Morgan Stanley DW Inc.,* Civ. A. No. 04–1858 (S.D.Cal. Sept. 12, 2006) (order granting final approval) (awarding named plaintiffs enhancement awards of $20,000 each); *Weaver v. Edward D. Jones & Co., LP,* Civ. A. No. 08–529 (N.D. Ohio Jan. 5, 2009) (order granting final approval) (approving stipulation that included enhancement awards of $15,000 each to named plaintiffs); *see also Godshall,* 2004 WL 2745890, at *6 (awarding $20,000 to each of two named plaintiffs in employment class action involving $1,125,000 settlement fund)."

## VI.   Plaintiffs' Counsel Should be Awarded Their Fees and Expenses.

Under the FLSA, plaintiffs are entitled to reasonable attorneys' fees spent in recovering unpaid wages.  29 U.S.C. § 216(b).  In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee:  "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Following that advice, and desiring to avoid a second litigation over fees, the Parties have agreed to settle their dispute over the award of attorneys' fees, costs, and expenses.

The agreed fee amount of $600,000.00[1] is eminently reasonable.  Attorney fees may be determined using either the lodestar method or the percentage of recovery method.  *Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015). Under either a lodestar method or percentage of recovery method, the agreed upon fee is reasonable given the legal complexity and volume of discovery materials in this case.  As a percentage of recovery, fees of $600,000 based upon a recovery of $1,350,000 represents 44.4% of the FLSA common fund, which, although towards the upper end of the range approved in the Third Circuit, is still acceptable.  *See Mabry*, 2015 WL 5025810, at *4  ("In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%") and *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank*

---

[1] Plaintiffs' counsel also seeks an additional $16,000 from the Gross Settlement Amount as reimbursement for out-of-pocket costs associated with the litigation.

*Prod. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) ("[F]ee awards have ranged from nineteen percent to forty-five percent of the settlement fund.").

Under the lodestar method, Plaintiffs' counsel have spent approximately 1,750 hours litigating this matter since 2012, including complex issues regarding 11th Amendment Immunity and Qualified Immunity which have taken this matter to the Third Circuit Court of Appeals and back. *See* Exhibit 3, ¶2. Plaintiffs' counsel have been required to review thousands of pages of discovery documents relating to PHEAA's immunity defense, and further position this case to obtain a favorable ruling in a Motion for Partial Summary Judgment, which precipitated the most recent appeal to the Third Circuit, from which this matter has been partially remanded for the purpose of settlement. Based upon 1,750 hour of work, and a reasonable blended hourly rate of $342 per hour for the complex legal work which was performed on a contingency with no assurance of recovery, Plaintiffs' counsel's lodestar of $600,000 is also very reasonable. *Id.*

Finally, Plaintiffs' counsel fee has been agreed by the Parties and will be paid without diminishing the fairness of the recovery to the class, insofar as class members are still being provided an excellent result of approximately 10 minutes per day of overtime per eligible day over a three year period, net of all attorney fees, costs, and Lead Plaintiff Awards. Pursuant to the prescription of the Supreme

Court in *Hensley*, 461 U.S. at 437, the Court should not disturb Parties' settlement of the amount of Plaintiffs' counsel fees.

## Conclusion

This Settlement was reached as a result of contested litigation and resolves a *bona fide* dispute between the Parties. The Parties engaged in thorough investigation of the facts and law and reached a Settlement that eliminates the Parties' respective risks and minimizes their expenses and the burden on the Court. The Settlement is fair, reasonable, and adequate, and provides class members a Net Settlement Fund which provides excellent value of the putative Collective Members' total claims for unpaid overtime hours worked during the applicable time period, free and clear of attorneys' fees or expenses.  For the reasons stated herein, Plaintiffs respectfully request that the Court approve the Settlement.

**McCARTHY WEISBERG CUMMINGS, P. C.**


Date:  June 2, 2017          */s/ Larry A. Weisberg*
                            Larry A. Weisberg
                            Derrek W. Cummings
                            2041 Herr Street
                            Harrisburg, PA 17103-1624
                            Phone: (717) 238-5707
                            Fax:  (717) 233-8133

**STUEVE SIEGEL HANSON, LLP**

Date: <u>June 2, 2017</u>          <u>*/s/ George A. Hanson*</u>
                                George A. Hanson, LLP
                                460 Nichols Road
                                Suite 200
                                Kansas City, MO  64112
                                Telephone:  (816) 714-7115
                                Facsimile: (816) 714-7101


                                ***Plaintiffs' Counsel***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date applied by the Court's ECF filing system, I

electronically filed the foregoing with the Clerk of Court using CM/ECF.


By: */s/  Larry A. Weisberg*_____
Larry A. Weisberg